DECEMBER TERM, 1876.    201

Humphries, Auditor et al. *v.* The Little Sisters of the Poor.

JOSEPH B. HUMPHRIES, AUDITOR, ET AL. *v.* THE LITTLE SIS-
TERS OF THE POOR.

1 . A corporation created for the sole purpose of affording "an asylum for
destitute men and women, and the incurable sick and blind, irrespective
of their nationality or creed," is an institution of purely public charity,
within the meaning of sec. 2, art. 12, of the constitution ; and of sec. 3
of the tax law of 1859, which provides for the exemption of the property
therein described from taxation.

2 The word " institutions," in the sixth clause of sec. 3 of the tax law, is
used to designate the corporation or other organized body instituted to
administer the charity, and the real estate described as belonging to
such institutions has reference to property owned by them; and to en-
title such institutions to hold the property exempt from taxation, they
must not only own it, but it must be so used as to fulfill the requirements
of the statute.

3. Real estate leased to such an institution for a term of years at a stipu-
lated rent is not exempt from taxation, although, by the terms of the
lease, the institution may have agreed with the lessor to pay the taxes.

ERROR to the Superior Court of Cincinnati.

The original action was commenced by the defendant in
error against Joseph B. Humphries, auditor, and John Gerke,
treasurer, of Hamilton county, to enjoin the collection of
the taxes levied for the year 1873 on certain real estate
claimed by the defendant in error to be exempt from taxa-
tion.

The original petition averred that the plaintiff, The Little
Sisters of the Poor, was a corporation organized under the
laws of this state, " for the sole and only object of offering
an asylum for destitute men and women, and the incurable
sick and blind, irrespective of their nationality or creed."
That in order to fulfill said object, it obtained from Hines,
Strobridge, and others, by lease, dated July 1, 1869, one of
the parcels of real estate described in the petition, with all
the buildings and improvements thereon, and covenanted,
in the lease, to pay all taxes that might be assessed on the
premises during the term.

The other two parcels of real estate described in the petition were owned by the plaintiff, having been acquired by purchase.

The petition states that the plaintiff entered on said premises, " and, in pursuance of its corporate design, threw open its doors to the public, sheltering within its walls the persons provided for in its organization, and still continues so to shelter, without any pay or remuneration whatsoever," and that no part of the premises is used with a view to profit.

The answers do not controvert the facts alleged in the petition as to the objects for which the plaintiff was incorporated, but deny that it is an institution of purely public charity, and aver, in substance, that the premises are used with a view to profit.

On the trial, it appeared that the term of the lease was from its date to January 1, 1874, and that the plaintiff stipulated to pay rent for the premises quarterly at the rate of $3,000 per annum, and to pay all assessments and taxes levied on the premises during the term. Also, that the plaintiff was the owner in fee of the other two parcels of real estate described in the petition, and was in the actual possession and occupancy of all of said property up to January 1, 1874, at which time plaintiff left the same.

Testimony was also given to the effect that the members of the corporation, nine in number, called sisters, devoted themselves to carrying out the objects of the corporation as these objects are described in the petition; that from fifty to sixty aged people of both sexes, unable to support themselves, are provided for and supported in the institution, some of them requiring attendance both by day and night, and that no other condition for admission is required than that the applicant be aged, infirm, or crippled. That the establishment is supported by voluntary contributions. These contributions are obtained in part by the sisters going out and soliciting funds, and by going to restaurants and similar places and obtaining the refuse eatables. Clothing and medicines for the inmates are obtained in a similar way.

No charge is made for the support of any of the inmates.

The superior of the institution, while on the stand as a witness, was asked on cross-examination the following questions:

Have you printed rules governing the institution? Ans. We have written rules. Ques. Can you and will you produce a copy of said rules here in court?

This question was objected to by the counsel of the plaintiff, and the objection was sustained by the court. To this ruling the defendants excepted.

The witness testified they had no written rules concerning the admission of applicants; that the written rules they had were to regulate the conduct of the inmates.

The court gave judgment for the plaintiff, enjoining the collection of the taxes levied on the three parcels of property described in the petition.

This judgment was affirmed by the court in general term, and the present proceeding in error is prosecuted to reverse these judgments.

*A. G. Collins,* for plaintiff in error:

The defendant in error is not an institution of purely public charity. *Gerke* v. *Purcell,* 25 Ohio St. 228; 2 Story's Eq. Jur. sec. 1150; *Phillips* v. *Bury,* 2 Term, 353.

There has been no *gift* or *endowment* here; the public has no security for any benefits in lieu of this exemption. If a private corporation can carry on a college and charge tuition and be free from taxation because the same is called " public charity," a hotel is entitled to such exemption for the same reason. If one private corporation can be exempt by legislation, so can every other one which comes into existence under the same law, else you come into conflict with sec. 2 art. 12 of the constitution, which provides that " laws shall be passed taxing by a uniform rule."

No private corporation can claim the exemption of their property by calling themselves an *"institution* of purely public charity," merely because they are the medium through which a charity is administered, especially when they enjoy

a. benefit to the extent these plaintiffs do. It is their residence; they are claiming these rights when they themselves are enjoying the charity.

Their profit is—1. A living, including house rent. 2. The increased valuation. 3. Hundreds of dollars annually in remitted taxes.

This is not an institution of purely public charity. If it is, the property *must belong* to them, or its *use appropriated to the support exclusively* of a public charity. This *belongs* to a *private corporation*, or is leased by them. Its use is *not* appropriated *exclusively* to the support, etc., but is the *private residence* of these defendants.

If the *charity* is public, the *institution* is not. If the institution can be said to be " an institution " of " public charity," it can not be said to be " an institution of *purely* public charity." As defendants have it under their full control, they gain their livelihood there, the same as any individual or private corporation does at any other business.

If these defendants " are the institution," and as such are entitled to the rights they claim under this statute, the buildings and lands are not " the institution," and are bound for the taxes.

It may be said that as to the land leased the amount of the taxes is a matter to be settled between the lessors and lessees, yet this can not affect the question that taxes *must be paid* and the land is bound for them; therefore the application to restrain the auditor and treasurer from assessing and collecting taxes should be overruled.

*Gray & Tischbein*, for defendant in error:

1. Whether the defendants in error are an institution, see *City of Indianapolis* v. *Sturdevant*, 24 Ind. 391; *Gerke* v. *Purcell*, 25 Ohio St. 244.

2. For whether it is an institution of purely public charity, see *Jackson* v. *Phillips*, 14 Allen, 538; *Attorney-General* v. *Pearce*, 2 Atkyns, 87; *Attorney-General* v. *Old*

*South Society*, 13 Allen, 474 ; .Ib. 457 ; 3 Atkyns, 244; *Babb* v. *Reed*, 5 Rawle, 151 ; 23 Ohio St. 145.

3. By section 2 of the statute, 2 S. & C. 1439, it is provided that "the terms *real property* and *land* whenever used in this act shall be held to mean and include not only the land itself . . . but *all rights* and *privileges* belonging or in any wise appertaining thereto."

Under this section, for all purposes of taxation the buildings and the lease of the Little Sisters, with its privilege of purchase, were their real estate, and no apportionment of the taxes could be made between them and the holders of the fee by the auditor, and any sale for delinquent taxes would vest in the purchaser a good and valid title both in law and equity, and thereby extinguish *their* title as well as the landlord's.  See 1 S. & C. 102, sec. 30.

But if their landlord's title could not be distinguished from theirs for purposes of taxation, it can not be distinguished from theirs in exempting them, and no argument can be built upon the profit *he* derives from the lands and buildings leased by him to such institutions.  See also, *Howell* v. *The City*, 1 Legal Gazette (Penn.), 242 ; *Hebrew Free School Association* v. *Mayer*, 4 Hun. 446 ; *Sisters of Charity* v. *City of Detroit*, 9 Mich. 97.

WHITE, J.  The first question in this case is whether the defendant in error (the plaintiff below) is an institution of purely public charity within the meaning of section 2, article 12, of the constitution ; and of section 3 of the tax law, which provides for the exemption of the property therein described from taxation.

The principles laid down in *Gerke* v. *Purcell* (25 Ohio St. 229), require this question to be answered in the affirmative ; and we still adhere to the doctrine of that case.

It seems to be supposed by the counsel of the plaintiff in error, that as the defendant in error is a corporate body it can not claim the benefit of the exemption, especially as it is not a public corporation.

But the right to the exemption depends upon the public

nature of the charity, and not upon whether the corporation or institution which administers it is a public or a private organization.

If the charity which the institution is created to administer and which it does administer is purely public, it comes within the exemption, although it may have a private foundation and be governed by private authority.

In one sense such an institution is public. It is public as respects the uses it subserves and the benefits it confers; but it is private as respects its organization and management.

True, by the term institution is to be understood an organization which is permanent in its nature, as contradistinguished from an undertaking which is transient and temporary; and while the evidence on this point is somewhat meager, yet it is not such as to warrant us in disturbing the finding of the court on this question of fact.

It appears that the defendant in error left the property in question on the 1st January, 1874, but it does not appear that its organization was not permanent and designed in good faith to carry out the charitable objects for which it was incorporated.

2. The next question is whether the property described in the petition comes within the exemption defined by the statute.

The clause of the statute under which the exemption in the present case is claimed is as follows:

" All buildings belonging to institutions of purely public charity, together with the land actually occupied by such institutions, not leased or otherwise used with a view to profit, and all moneys and credits appropriated solely to sustaining and belonging exclusively to such institutions." S. & S. stat. 761.

It seems clear to us that the word "institutions" in this clause is used to designate the corporation or other organized body instituted to administer the charity, and, that the real estate described as belonging to such institutions has reference to property owned by the institutions; and that

to entitle them to hold the property exempt from taxation, they must not only own it, but it must be so used as to fulfill the requirements of the statute.

That such is the meaning of the word "institutions" is manifest from the last part of the sentence, which exempts moneys and credits. Moneys and credits, to be exempt, must be appropriated solely to sustain and must belong "exclusively to such institutions."

The word "belonging" is used in the same sense throughout the clause, and, as there used, means ownership.

We do not say that the legal title must be vested in the institution. If the legal title were held in trust for the sole use and benefit of the institution, the property, in such case, would be regarded as belonging to the institution. *Gerke v. Purcell, supra.*

In this case, two of the parcels were owned by the institution, and, as we understand the record, were actually occupied and used by it in connection with the parcel held by the lease on which the buildings used by the institution were situated.

Under the statute, real estate is to be listed for taxation by the owner. This duty, as respects the leased premises in question, rested upon the lessors. The taxes were a charge against them and not against their lessee, and, as respects the public, it was their duty to see that the taxes were paid, without reference to their agreement with the lessee.

The operation of the statute for the levying of taxes and enforcing their collection is not affected by the agreement of parties for their payment, and the liability of the lessors in the present instance to pay the taxes on the leased premises is the same in respect to the public as it would have been if the lessee had not stipulated to pay them.

We, therefore, think the court erred in holding that the property last named was not taxable while occupied by the defendant in error. In the ruling of the court in exempting the other two parcels while so occupied, we find no error.

In regard to the alleged error in overruling the question asking for the rules of the institution, it is only necessary to say that the rules referred to seem to be rules for the government of the inmates of the institution; and if so, they could not affect the character of the institution as fixed by its charter. On the question as to whether the organization was one in good faith for the purpose of administering a purely public charity, or only colorably so to subserve other purposes, these rules might be material. In the present instance this is not shown to have been the purpose of the inquiry, and it has been too often ruled by the court to need the citation of authority, that to make an objection to the exclusion of evidence available, on error, its materiality must affirmatively appear from the record.

Judgment reversed and petition dismissed as to the leasehold property, and affirmed as to the remainder.