Caldwell, J.
The plaintiff is the owner of an estate for her life in property escribed in her petition. The property is real estate, and located in the heart of the city of Cleveland on Euclid avenue. She brings this action against Albert E. Akins, county auditor of Cuyahoga county, to enjoin him from placing on the county tax duplicate said property, and to restrain him from collecting the taxes assessed on her said property for the years 1891,1892 and 1893. She avers the taxes on her property are a cloud on her title, and asks to have the same removed. Some forty years ago, the land in question was conveyed in trust to Mary Beaumont and others, for the Ursuline Convent. The convent was unincorporated. It was a religious, charitable association, the members of which devoted their whole time to teaching, religious exercises and charitable work. Some thirty years ago, an academy was duly incorporated under the laws of the state of Ohio, under the name of The Ursuliae Convent of Cleveland, which after-wards, under the laws of Ohio, became a college. The teachers and officers of the academy and college were identical with those of said unincorporated charitable association. The title to said property has been so held in trust, and the property has been used exclusively as before stated down to July 1, 1893. During all of said time down until 1891, the property was exempted from taxation as being owned and used exclusively for charitable, educational and religious purposes. In 1891 the property was placed on the tax duplicate without the knowledge or consent of any of the trustees of the title, or .of any one connected with the uses of the same. The taxes assessed against the property for each of the years 1891, 1892 and 1893 amount to over four thousand dollars. On the 19th of June, 1890, Mary Imping and others, the then trustees of title of the property, by written contract, contracted to sell *230 the premises to George W. Pack, Charles L. Pack and Myron T. Herrick, and assigns, for two hundred and seventy-five thousand dollars, of which fifty-thousand dollars were to be paid cash in hand, and twenty-five thousand dollars on the 15th day of September, 1890, and the trustees had the right to call for such other sums as they might desire, on giving ninety days’ notice, not to exceed, however, twenty-five thousand dollars, April 1, 1892. The same sum September 21, 1892, and fifty thousand dollars Feb’y 1, 1893, and the balance of the sum to be paid July 1, 1893. For all payments which should be called for by the’ trustees, except the down payment, and the payment of twenty-five thousand September, 1890, interest at the rate of five per cent, per annum should be paid by the trustees from the time they received the same to the first day of July, 1893. It was provided in the contract that the trustees should retain possession of the property to the first day of July, 1893.
The contractees were to pay the taxes for 1893, if there were any to be paid. The contract was fully complied with by July 5, 1893, at which time a deed of the property was given to the plaintiff, who, in the meantime, had become entitled to the same. From the time of the making of the contract to July, 1893, the property was exclusively used for the same purpose that it had been used for theretofore, as before stated.
The trustees, soon after making the contract, bought other land in the city, and at once commenced building on the same proper structures into which they could move the college, and on which they paid taxes until such time as they moved the college into the same. There was no object in making the contract as it was made, other than to keep the college where it had been until the new buildings were completed. There was no intention in making the same to avoid taxes.
Under the foregoing facts the plaintiff claims the property was exempt from the taxes for the years 1891, 1892 and 1893, *231 and the defendant insists the taxes for said years were properly assessed on the property.
The action against the auditor to compel him to strike off the taxes is against the proper party under the present statute. Butler v. Commissioners, 39 Ohio St. 168, 169. No question is made but that a proper application was made to the auditor to have the tax in question abated. It is conceded that if the land was the property of the Ursuline College, it is exempt from taxation. It is conceded that the purposes for which the land was used were- exempting uses.
It is contended by defendant that in consequence of the contract of sale made by the trustees of the Ursuline Academy, the land ceased to be exempt from taxation.
The provision in the contract in relation to the payment of taxes does not affect any question under consideration :
1. Because it is only an agreement to pay legal taxes.
2. Because such an agreement cannot in any way affect the obligations of the land or its owners to the public. Tracy v. Reed, 38 Fed. Rep. 69; Davis v. Cincinnati, 36 Ohio St. 27; Humphrey v. The Little Sisters of the Poor, 29 Ohio St. 207.
Is the property under the facts of the case exempt from taxation '?
Counsel for plaintiff claim it is exempt under subdivision one, and also under subdivision six of section 2732 of the Revised Statutes, and as amended 88 Ohio Laws, 95. That it is exempt under subdivision one, because it was used for the purposes therein named; and that it was exempt under subdivision six, because it was owned by the trustees, and used by them exclusively for the purposes therein named.
Subdivision one of section 2732 exempts “ all public colleges, public academies, all buildings connected with the same, and all lands connected with public institutions of learning not used with a view to profit.” The language in the see *232 tion preceding that quoted shows conclusively that all that is necessary to exempt the property is, that it shall be used exclusively for the purposes named. The property in question was so used, and without any view to profit. It follows then that this property was exempt from taxes under this provision of the statute, until July 1, 1893, if this was a “public college.”
As a college it was open to the public. Any one could attend the same, whether Protestant or Catholic. In this sense it was public. But it was not public in the sense that it belonged to the public. It becomes necessary, then, to inquire what is meant by the term “ public ” as used in the statute.
In Gerke v. Purcell, 25 Ohio St. 229, the Supreme Court say : “ In article 12, section 2, of the Constitution, ‘ public’, as applied to school-houses, means such as belong to the public and are established and conducted under public authority.” The word “ public’ in the first subdivision of section 2732, as applied to school-houses, colleges and institutions of learning, is not used in the sense of ownership, but is descriptive of the use to which the property is devoted.” “The word ‘public ’ as applied to school-houses, is obviously used in the same sense as when applied to colleges, academies and other institutions of learning.”
“ When private property is appropriated to the support of education for the benefit of the public without any view to profit, it constitutes a charity which is purely,public.” This property was then a public college within the meaning of the statute, and is comprehended within the constitutional provision, and was therefore exempt from taxation while being thus used.
Subdivision six of section 2732 exempts “ All buildings belonging to institutions of purely public charity, together with the land actually occupied by such institution.”
Under the decision of the Supreme Court in Gerke v. Purcell, this institution is one of purely public charity. By this subdivision it is'necessary that ownership and use shall con *233 cur. And a charitable institution is the owner, if the title is held in trust for it.
In Humphreys v. Little Sisters of the Poor, 29 Ohio St. 206, the Supreme Court held that the word “ owner ” in the taxing law, refers to the owner of the legal title, unless special exceptions are made. Especially is this so where the vendee has nothing but a contract right without possession, and payment not made. Sections 900 and 1034 require the property to be listed in the name of the owner; sec. 1025 provides for changing property on the tax lists from the name in which it stands to the name of the owner when rendered necessary by any conveyance, partition, devise, direct or otherwise. Sec. 1026 provides for cancelling fraudulent or improper transfers. By sec. 1027 the Auditor has the right to examine the records of deeds. By sections 1095 and 1104 overdue taxes on real property are to be collected from the owner of the land. These and similar provisions have been construed and the conclusion above stated reached in many cases: State v. Township of Union, 36 N. J. L., 310; Tracy v. Reed, 38 F. R. 69; Thomas v. Holmes County, 57 Miss., 754-760; New Orleans v. Russ, 27 L. An., 431; Russell v. New Haven, 51 Conn., 259-261; Baldwin v. Shim, 84 Ky., 502-512; Davis v. Cincinnati, 36 Ohio St. 24, 26-7; Ruggles v. Nantuck, 11 Cush., 433; Morrison v. Manchester, 53 N. H., 538, 559, etc.; Bush v. Kingsley, 14 Ohio 21; Sage v. Slintz, 23 Ohio St. 1, 8; Churchill v. Little, 23 Ohio St. 30. Land of the United States is not taxable until the Government has been fully paid and everything done required to entitle the purchaser to a patent. Railway Co. v. McShane, 22 Wall, 461; Railway Co. v. Prescott, 16 Wall, 608; Pitts v. Booth, 15 Texas, 453.
The contract of purchase was to convey July 1, 1893 to John L. Woods and others. Before that time arrived, John L. Woods alone became entitled to the deed when the time for making it should arrive. When the time did arrive, the *234 plaintiff'had become entitled to have the deed made to her. To avoid keeping the run of these transfers by instruments which are not to be recorded, the state has provided by statute for following the legal title, and as a rule, especially in cases like this, assess the tax'es against the one holding the legal title. By this arrangement the State regards the one holding such title the owner, the one to whom it belongs. This being so there was no authority for the Auditor’s placing the taxes against any one but the trustees who held the legal title and were the owners under the taxing laws, and those to whom the property belonged under the laws exempting the same from taxation. It follows that the property was exempt from taxation up to July 1, 1893.
It is said that the vendors were trustees holding the legal title in trust for the vendees and their assigns, and the vendees held the deferred payments in trust for the vendor. This- proposition of law states correctly the legal status of veudorand vendee under an executory contract of sale of real property as between themselves. As to bona fide sales when the vendor remains in possession after the contract of sale, the vendor is the owner. The State, by its laws for taxation, for obvious and expedient reasons, does not recognize the trust relation inter se of vendor and vendee, but treats the vendor as the owner. The State may declare a purchaser under a land contract, while payments remain unpaid, under the duty, to return the same for taxation, as it has done in sec. 2731, that school and ministerial lands when sold under .authority of law shall be subject to taxation immediately after such sale. This’exception by statute however only tends to prove the general rule to be otherwise; if not, then there would be no need of the above provision found in sec. 2731.
It is claimed that the general intent of the. constitution is that each parcel of property shall bear its'just proportion of .the burden of taxation; that this general rule was suspended by the laws of the State only while this property was used, or owned’and used for purely charitable purposes. As soon as *235 it was divorced from its charitable purposes, it at once came under the general rule again. That although it was improperly put on the tax lists, for the reason it was then exempt, yet if it was not thus exempt when this action was brought then the Court should leave it to bear its burden of taxation from July 1, 1893. This line of argument would lead to the conclusion, that if property becomes exempt after an assessment has become a lien upon it, then such taxes and lien should be removed from the same, without payment. It seems to us much more logical to say that if land becomes exempt from taxation after a tax becomes a lien on the same, that such taxes must be thereafter paid, for the reason that the State has fixed a time for the return of assessors, which is to be a guide to the Auditor in making up the tax lists, a time when the Auditor shall prepare the lists, and when the taxes shall become a lien. And these and other provisions of the law point clearly to a time when the status of real property is to be determined as to whether it is exempt or not. At this designated time this property was exempt. There is no provision of law for putting it on the tax lists until the next lists are made up.
White, Johnson & McCaslin, for plaintiff.
T. K. Dissette, for defendant.
Section 2846 provides : It is hereby made'the duty of every person seized of or holding lands, to list the same for taxation with the County Auditor, on or before the third Monday of May next after the same shall be' subject to taxation. This property was not subject to taxation until July 1, 1893, and there was no duty to list it with the Auditor until the 3rd Monday of May, 1894. It follows that there was no law for assessing this land for any one of the years 1891, 1892 or 1893.
The plaintiff may have a decree-in conformity to the provision of Section 1038 Rev. Stat., as therein provided.