DAVID T. DAVIES, JR., AUD. v. STATE EX REL. J. L. BOYLES.

1. THE "BLIND PENSION LAW," 97 O. L. 392 (LAN. R. L. 2955) NOT UNCONSTITU-
TIONAL.

   The act of April 25, 1904, 97 O. L. 392 (Lan. R. L. 2955 *et seq.*), providing
   for the payment of $25 per capita quarterly to certain worthy blind
   persons, is not unconstitutional in that it is violative of Sec. 2, Art. 4, and
   Sec. 1, Art. 14 of the federal constitution, and Sec. 26, Art. 8 of the
   Ohio constitution.

2. SECTION 1, ART. 7, OHIO CONST. A RECOGNITION THAT BLIND SHOULD BE PRO-
VIDED FOR.

   While the word "institution" found in Sec. 1, Art. 7 of the Ohio constitu-
   tion, which provides that institutions for the benefit of the blind shall
   always be fostered and supported by the general assembly, may not admit
   of such a broad construction as to authorize directly the legislature to
   aid the blind, it is, nevertheless, a recognition that the blind as a class
   should be considered and provided for. Said constitutional provision
   does not impose a limitation upon the power of the legislature to provide
   for the blind in any other way than that therein specified.

3. RULE FOR DETERMINING CONSTITUTIONALITY OF LEGISLATIVE ENACTMENTS UNDER
OHIO CONSTITUTION.

   The Ohio constitution does not grant powers to the legislature except by
   general grant, and in determining whether any particular enactment is
   constitutional or not the courts must determine whether the constitution
   contains any express or implied inhibition upon the power of the legis-
   lature to make the enactment.

ERROR to Lucas common pleas court.

W. G. Ullery and J. S. Martin, for plaintiff in error.

Cole, Whitlock, Milroy & Mallow, for defendant in error.

WILDMAN, J.

This is an action in error, brought to reverse the judgment of the
court of common pleas in overruling the demurrer of the plaintiff in
error—the defendant below—and in rendering judgment against the
plaintiff in error in favor of the defendant in error. The proceeding
below brought on the relation of James L. Boyles, by the state against
the auditor of Lucas county, Ohio, was for mandamus to compel the de-
fendant to obey the provisions of a certain act providing for the payment
to blind persons of an allowance from the public funds of $25, quarterly.
The only question presented for the consideration of this court is as to
the constitutionality of the law providing for this allowance. The

statute is found in 97 O. L. 392 (Lan. R. L. 2955 *et seq.*), and its provisions are, substantially and so far as concerns the questions which here arise, as follows:

"That it shall be the duty of every county to contribute such sum or sums of money from the poor or general expense fund toward the support of every worthy blind person free from vicious habits, as hereinafter provided.

"That all male blind persons over the age of twenty-one years, and all female blind persons over the age of eighteen years, who are declared blind in the manner hereinafter set forth, and have no property or means with which to support themselves, shall be entitled to, and receive, not more than twenty-five dollars per capita quarterly, and that the probate judge shall authorize the auditor to issue warrants for the amounts due such persons."

The statute further provides:

"The said blind persons must be *bona fide* residents of the state of Ohio for five years, and in their respective county one year."

There are other provisions in the state for the purpose of carrying out the general provisions which I have recited, but it is unnecessary to read them. The act is attacked upon the ground that it violates certain provisions of the constitution of the United States and also certain provisions of the constitution of the state of Ohio. The special sections of the federal constitution are Sec. 2, Art. 4; Art. 5—one clause in it— and Sec. 1, Art. 14; and as to the Ohio constitution, Sec. 2, Art. 1, and Sec. 26, Art. 8.

It is urged that not only does this act provide an allowance for one special class of indigent people, but that it unjustly discriminates among persons of that class; it sets off the blind as recipients of the public bounty and then among the blind excludes from the benefits of the act those who are unworthy, or of vicious habits and those who have not been residents of the state for five years or who have not been residents of the county for one year and it excludes all who are not adults.

The defendant, on the other hand, insists that not only does the act not violate the state constitution, but that it has express warrant to sustain it in Sec. 1, of Art. 7 of the state constitution, or, if that section is not broad enough to justify the legislature in the enactment complained of, that the legislature, under its general police power, might have made the same enactment.

Without spending very much time upon the claims of the plaintiff in error, that the law makes an unjust discrimination among classes, it

Davis v. State.

is sufficient to say that the blind have been from time immemorial, perhaps, recognized as a class entitled, not only to the sympathy of those not so afflicted, but also to some degree of aid to be accorded by the public, which is a recognition of the Biblical maxim, that, ''The strong should bear the infirmities of the weak.'' It is impossible for human beings who are strong and who do not need such aid, to shut their eyes to the infirmities of the weak or to turn coldly away from them and say they will not give aid. The question, of course, will arise in all such cases as to whether the allowance is a reasonable one or not; whether it is capricious or arbitrary; whether it is an act of unjustifiable paternalism on the part of the legislature, or whether, being not capricious or unreasonable, it finds warrant in the sense of reasonable people that the aid should be given. Nor does it seem to us that the act is amenable to criticism because it makes some discrimination among the blind, by withholding its benefit from those of vicious habits, or found to be unworthy, or who have not had the required residence in the state or county, or who are not adults. There is another provision made by the legislature in Ohio for the benefit of blind persons who have not reached the age of majority. We have institutions provided for their education, in order that they may be better able to maintain and support themselves in later life; but there is no such provision upon our statute books for institutions, technically so called, wherein adult blind persons may be maintained, so that they would seem to be some reason found in this fact for the giving of aid to those who, not being sustained in any public institution, are still at the disadvantage of not having the sense of sight to aid them in obtaining a livelihood and so keeping them from becoming a public charge. The objection to the statute that it gives its benefits only to those who have acquired a certain residence in the state, might be urged with equal force against all of our poor laws. There must be an acquired residence in the county. It might be urged with equal force against the bestowal of the elective franchise upon those who have acquired a certain residence in the state, county or voting precinct. It might be urged with equal force against the statute which provides that a person when bringing an action for divorce must have had a residence in the state a year and must be a *bona fide* resident of the county where the action is instituted.

We think, then, that this statute is not open to criticism upon any of those grounds.

But it is claimed that it is the taking of private property by taxation and using it for a private and not for a public purpose. It seems to the court, however, that public interests are subserved by the aiding of

persons who might become a public charge, if left to their own resources, to such an extent that, by combining the small fund given them by the state with what they may be able to earn in those limited vocations which blind people may find, they might be able to maintain themselves and avoid becoming a charge; just as our infirmary directors are permitted to give out-of-door relief to many people instead of forcing them within the walls of the infirmaries. This law may be wise, or unwise; expedient, or inexpedient; it may not be good policy to grant any sort of out-of-door relief to the poor; it may not be good policy to select among the many classes of the helpless, the blind, and say that a special fund shall be set apart for them, and yet this law does not stand alone in this respect. We have statutes providing for the relief of indigent soldiers; we have a soldier's relief commission which apportions and distributes the fund. The theory of the legislators may have been that the mere fact that a person is blind, raises a presumption of some degree of helplessness entitling the person to relief.

On the other hand, it is urged that the special provision of our constitution, Sec. 1, Art. 7, that "Institutions for the benefit of the insane, blind, and deaf and dumb, shall always be fostered and supported by the state; and be subject to such regulations as may be prescribed by the general assembly," is a direct authorization of the legislature to give aid to the blind, and a broad construction is contended for this word "institution," as used in the constitution. Definitions of the word as given by our lexicographers, Webster and the Century dictionary, are cited; and also the case of *Gerke* v. *Purcell*, 25 Ohio St. 229, 244, and the case of *Humphries* v. *Little Sisters of Poor*, 29 Ohio St. 201, 206.

It is urged that no technical limit to the scope of this word, "institution" should be given by the court, but that it should be treated broadly as applying to the method or manner of aiding persons included in the three classes mentioned in this section of the constitution; the insane, the blind and the deaf and dumb. For myself, I am not fully persuaded that this word, institution, will bear this broad construction; but that this section is a recognition that the blind, as a class, should be considered and provided for by the legislature, may well be argued. In other words, it is a recognition by the constitution makers that the setting apart of the blind, just as the setting apart of the insane, is not a capricious selection, not an arbitrary selection, but that it is founded upon some reason, and whether any special legislation which is enacted for the benefit of such a class is wise or unwise, it still is not open to criticism simply because such a class has been set apart for the protection of the state.

Davis v. State.

It is also urged in behalf of defendant in error that even if this term, institution, is not to be so construed, and if the power for this particular act is not to be found in the section of the constitution referred to, that still, under the broad police power of the state, it should be upheld. It seems to us, however, that this case is one in which we may very properly refresh our memories with an examination of the distinction between the federal constitution and the constitution of the state of Ohio in regard to the rules of construction. The constitution of Ohio does not grant powers to the legislature except in so far as the power is broadly granted in an express provision, that "The legislative power of this state shall be vested in a general assembly, which shall consist of a senate, and house of representatives," found in Sec. 1, Art. 2 of the constitution of 1851, a provision very slightly altered from the constitution of 1802, in Sec. 1 of Art. 1 which provided, that "The legislative authority of this state shall be vested in a general assembly." The distinction is very marked between this language and that used in the federal constitution, where, at the very beginning of this supreme law of the land, we have the provision: "All legislative powers *herein granted* shall be vested in a congress of the United States." I do not believe—and I voice here the views of the other members of the court— that any one of the provisions of the federal constitution to which reference has been made, touches this question. It is not our view that there is any violation of the fourteenth amendment, or of Art. 5, or of the other sections and articles of the federal constitution to which reference has been made, in this classification or in this use of the public funds, because it is not, in our judgment, a use of public funds for private purposes, but for a public purpose, to provide for those classes of its citizens who require this sort of relief.

It might be argued with some degree of plausibility, perhaps, that the constitution makers having provided that "Institutions for the benefit of the blind" should "always be fostered and supported by the state," that it might be a limitation upon the power of the legislature to provide for the blind in any other way. The constitution of the state, as I have said, does not grant powers to the legislature except by a general grant, and in determining whether any particular act is constitutional, or otherwise, we must ascertain whether the constitution contains any express or implied inhibition upon the power of the legislature to make the enactment. But the examination of this Sec. 1 clearly indicates that it is not even a grant—a special grant—of a power to establish institutions for the blind, deaf and dumb, or insane. It is a provision that such institutions for these classes shall always be fostered and sup-

ported by the state, and be subject to such regulations as may be prescribed by the general assembly, but it is not a grant of power.

We have one case in the state where there was, in terms, a grant of power, and yet the Supreme Court in construing it, has held that it did not operate as such. The case referred to is *Mason* v. *State*, 58 Ohio St. 30 [50 N. E. Rep. 6; 41 L. R. A. 291], the syllabus of which is as follows:

"The provisions of the act of April 8, 1896, entitled 'An act to prevent corrupt practices at elections,' (92 O. L. 123), which direct the commencement of an action by the prosecuting attorney, at the instance of the attorney-general, for the purpose of inquiring into the title to an office of a successful candidate who is charged with acts made unlawful by any law of this state, and which authorize the court, upon finding any of such charges true, to render judgment declaring the election void, the office vacant, and excluding the incumbent therefrom, are not in conflict with the constitution, and are valid."

And that is notwithstanding the fact that there was a special provision in the constitution of the state as to the loss of franchise and the loss of the right to hold office by certain persons convicted of crime. I read from page 48 and certain other pages:

"The people in framing the constitution committed to the legislature the whole law-making power of the state, which they did not expressly withhold. Plenary power in the legislature, for all purposes of civil government, is the rule. A prohibition to exercise a particular power is an exception."

And a number of cases are cited showing the policy of our Supreme Court along this line. Judge Gholson, used this language in one case. *Baker* v. *Cincinnati*, 11 Ohio St. 534, 542.

"It will be observed that the provision is not that the legislative power *as conferred in the constitution*, shall be vested in the general assembly, but that the legislative power of this state shall be vested. That includes all legislative power which the object and purposes of the state government may require, and we must look to other provisions of the constitution to see how far, and to what extent, legislative discretion is qualified or restricted."

On page 54 is certain language of Judge McIlvaine, from the case of *State* v. *Covington*, 29 Ohio St. 102.

"If the framers of the constitution had intended to take away from the legislature the power to name disqualifications for office, other than the one named in the constitution, it would not have been left to the very doubtful implication which is claimed from the provision under consideration." (That is to say, the conviction of a crime or felony.)

Davis v. State.

"The power under the general grant being ample and certain, a statute should not be - declared void because in conflict with an alleged implication unless such implication be clear and indubitable."

We find no such clear and indubitable implication from this provision of our constitution that the state shall foster and support institutions for the blind, the insane and the deaf and dumb.

All legislative power being broadly conferred by the constitution, it is not essential for us to inquire whether this particular enactment is under the police power, or whether it is under any other special power; it is under the general legislative power to make provision for any legitimate class recognized by a sense of justice and the common reason of the people of the state, or recognized by the constitution itself as a class legitimately requiring attention.

The blind have been recognized by another statute of our state as a class requiring special treatment and consideration, and the act in which they have been so recognized has been declared constitutional by the Supreme Court in the case of *State* v. *Hogan,* 63 Ohio St. 202 [58 N. E. Rep. 572; 52 L. R. A. 863; 81 Am. St. Rep. 626]. I read from the syllabus:

"Section [Lan. 10689] 6995 Rev. Stat., commonly known as the tramp law, whereby punishment is prescribed for threatening to do injury to the person of another by a tramp, is not in conflict with the Ohio bill of rights, nor with Sec. 26, Art. 2 of the constitution, nor with the fourteenth amendment to the constitution of the United States."

I might say that Sec. 26, Art. 2 of the constitution of Ohio is claimed as one of the sections which support the contention of the plaintiff in error here.

This tramp law, referred to by Judge Spear, is given on page 208, and reads:

"Whoever, except a female or blind person, not being in the county in which he usually lives or has his home, is found going about begging and asking subsistence by charity, shall be taken and deemed to be a tramp." etc.

On page 209 Judge Spear, says:

"In brief the claim against the law is, that it deprives persons of liberty without due process of law and denies to them the equal protection of the laws, and deprives of the right of seeking and obtaining happiness and safety; that it is an act of a general nature but not of uniform operation throughout the state; and that it subjects the accused to a cruel and unusual punishment. And it is specifically urged that the act does not operate uniformly because it provides a punishment for an

Lucas County.

offense committed in one county different from punishment for a like act committed in another, inasmuch as the offense of threatening to do injury to the person or property of another in a county other than that of the residence of the accused may be punished by incarceration in the penitentiary, while if done in the county of his residence it as most a misdemeanor.

"It is conceded that the law is of a general nature. The test of uniform operation and with respect to the required conformity to the 'law of the land' and to the requirement of due process of law seems to be, that if the law under consideration operates equally upon all who come within the class to be affected, embracing all persons who are or may be in like situation and circumstances, and the designation of the class is reasonable not unjust nor capricious or arbitrary, but based upon a real distinction, the law does operate uniformly, and if, added to this, the law is enforced by usual and appropriate methods, the requirement as to 'due process of law' is satisfied."

One of the contentions of counsel in argument was, that the money of the taxpayer is not taken by due process of law; that in the distribution of the fund arising from taxation, public interests are not recognized as the true criterion—in other words, if the money was used it was for a private purpose.

There is very much more in this cited decision in discussion of some of the principles which might seem to be applicable to this case, but it is unnecessary to read it. The judge does say:

"Nor is it an objection to a penal statute that it does not apply to all persons who might by any possibility commit the act interdicted. It is for the legislature to determine how far to go in order to afford the desired protection to society. The exemption of some, where it does not interfere with the rights of others, is not open to objection on constitutional grounds. The principle is illustrated in the statute under review. Females and blind persons are not included within its terms. This, presumably, from considerations of humanity, but principally because but little, if any, danger is threatened from such, and this exemption has not met with objection in this case. The act in question undertakes to define a tramp, or vagrant, by stating what acts shall constitute such character."

On the whole, the conclusion of the court is, that the act is not invalid for any reasons claimed by counsel for defendant in error and the judgment of the court below will be sustained.

**Haynes** and **Parker, JJ.,** concur.