Johnson, J.
As shown in the statement, this proceeding in error relates only to the validity of the taxes sought to be collected as against the endowment fund held by the trustee.
The question involves a consideration of the power granted by the constitution to the legislature, with reference to the taxation of the property of institutions of purely public charity, as well as of the legislation enacted pursuant to that grant.
This proceeding was brought before the amendment in September, 1912, to Section 2 of Article XII of the Constitution. Pertinent parts of the section, as then in force, are: “Laws shall be passed, taxing by uniform rule, all moneys, credits, investments in bonds, stocks, joint stock companies, or otherwise; and also all real and personal property according to its true value in money, * * * but burying grounds, public school houses, houses used exclusively for public worship, institutions of purely public charity, * * * may, by general laws, be exempt from taxation.” There is not here involved, and we are not called upon now to decide, the effect of the amendment adopted in September, 1912, to that section of the constitution. That amendment changed the phrase “institutions of purely public charity” and substituted for it the phrase “institutions used exclusively for charitable purposes.”
*242 In the consideration of this important subject we are impressed that much assistance may be had by a review of the statutes passed pursuant to the original section of the constitution and of the decisions of this court construing them.
In the first place, it has been constantly recognized and held by this court that the phrase “institutions of purely public charity” is a broad one, and that the term may be applied by the. legislature to the organization which administers the charity or to the establishment where its operations are carried on.
In Gerke, etc., v. Purcell, 25 Ohio St., 242, it is said: “The property that may be exempted from taxation depends either upon its ownership, or the use to which it is applied, or upon both.” And at page 244: “The term ‘institution’ is sometimes used as descriptive of the establishment or place where the business or operations of a society or association is carried on; at other times it is used to designate the organized body. * * * As used in the constitutional provision, the term may be applied by legislation in either sense.”
In Humphries, Auditor, v. Little Sisters of the Poor, 29 Ohio St., 201, it is held in the syllabus: “A corporation created for the sole purpose of affording ‘an asylum for destitute men and women, and the incurable sick and blind, irrespective of their nationality or creed,’ is an institution of purely public charity, within the meaning of sec. 2, art. 12, of the constitution.”
In Cleveland Library Assn. v. Pelton, Treas., 36 Ohio St., 253, the court declared: “A library as *243 sociation, incorporated under the laws of this state, whose objects and purposes are, ‘The diffusion of useful knowledge, and the acquirement of the arts and sciences, by the establishment of a library of scientific and miscellaneous books for general circulation, and a reading-room, lectures and cabinets / open to all persons, without distinction, upon equal terms and the income and revenues of which are devoted exclusively to such objects and purposes, is ‘an institution of purely public charity/ within the meaning of the 6th clause of the act of March 21, 1864. S. & S., 761.”
In Davis, Auditor, v. Cincinnati Camp Meeting Assn., 57 Ohio St., 257, the court rested its decision, upholding the exemptions claimed in that case, on the finding that the “association is such an institution.”
In Little, Treas., v. U. B. Theological Seminary, 72 Ohio St., 417, the court declares it to be settled that an institution, such as the petition alleges the seminary to be, is an institution of purely public charity, within the meaning of this section of the constitution, and that the authority conferred upon the general assembly is to exempt such institution without limit or qualification.
An examination of the enactments of the general assembly, passed pursuant to the power granted by the section of the constitution above referred to as adopted in 1851, likewise discloses a settled policy of legislation.
The first act passed on the subject, after the adoption of the constitution of 1851, was that of April 13, 1852 (50 O. L., 135). The third section *244 of that act exempts: “All buildings belonging to institutions of purely public charity, together with the land actually occupied by such institutions not leased or otherwise used with a view to profit; and all moneys and credits appropriated solely to sustaining and belonging exclusively to such institutions.” It is significant that the first legislature that met after the constitution of 1851, and which was fresh from the public discussions concerning it, treated the term “institutions” in the broad sense above referred to. This language was retained in all the subsequent legislation until the revision of 1880, when, without change, it became part of Section .2732, Revised Statutes.
On May 21, 1894, the section was amended so as to exempt the buildings belonging to and used exclusively for armory purposes by lawfully organized military organizations, but the provision as to institutions of purely public charity remained the same.
On May 9, 1908, clause six of Section 2732 was again amended by substituting, as the second word in the clause, the word “property” for the word “buildings.”
The decisions of this court have likewise been in harmony in construing the provisions of the statute as to “land actually occupied by such institutions not leased or otherwise used with a view to profit.”
In Library Assn. v. Pelton, supra, it was held that where such an association owned a lot of ground, with a block of buildings thereon, constructed as an entirety, and the buildings had a *245 basement and three stories over the same, each divided into rooms adapted to its use, and for renting, some of which, on each floor, were used by it for its purposes; some were rented out, and the rents received applied exclusively to keeping the property in good repair, and to the purposes of the association, and some were vacant, such parts of the building and appurtenances as were rented, or otherwise used with a view to profit, were not exempt from taxation; and the fact that the buildings were so constructed that the parts leased, or otherwise used with a view to profit, could not be separated from the residue by definite lines, was no obstacle to a valuation of such parts for the purposes of taxation, having due reference to the taxable value of the entire property.
As to personalty, it seems to be conceded that after the act of 1852, and until this proceeding, no claim was made that the personalty of such organizations was subject to taxation.
In Little v. Seminary, 72 Ohio St., 417, supra, it is held in the syllabus that “The sixth subdivision of section 2732, Revised Statutes, is within the authority which is conferred upon the general assembly by section 2 of article 12 of the constitution. It exempts from taxation an endowment fund of a college which belongs exclusively to it, and which is devoted solely to deriving an income for its support.”
It is thus shown, by the history of the legislative treatment of the subject and by the adjudications of this court, that for a period of more than fifty years after the adoption of the constitution of 1851 *246 it was the settled law of the state, first, that land and the buildings thereon actually occupied by institutions of purely public charity were exempt from taxation; second, that the real estate of such institutions, which was leased or otherwise used with a view to profit, was not exempt from taxation, and, third, that the moneys and credits of such institutions, including their endowment funds, which were devoted solely to deriving an income for their support, were exempt. This was the situation until the adoption of the General Code, which was in effect when this suit was brought.
The codifying commission, pursuing its usual course, divided Section 2732, Revised Statutes, which had consisted of ten subdivisions, into twelve separate sections, to-wit, Sections 5349 to 5360 of the General Code. The portions pertinent here are Sections 5353 and 5354, General Code, which read: “Sec. 5353. Lands, houses and other buildings belonging to a county, township, city or village, used exclusively for the accommodation or support of the poor, and property belonging to institutions of public charity only, shall be exempt from taxation.” “Sec. 5354. Buildings belonging to and used exclusively for armory purposes * * * and the land owned and used as sites for the armory buildings of such military organizations, not leased or otherwise used with a view to profit, and moneys and credits appropriated solely to sustain, and belonging exclusively to, such organizations, shall be exempt from taxation.” It will thus be seen that the only reference to institutions of purely public charity is included in Section 5353, viz., “and prop *247 erty belonging to institutions of public charity only, shall be exempt from taxation.” It would seem to be clear that this language is sufficiently broad to include every exemption which had theretofore been provided in favor of the institutions referred to, and that the word “property,” which replaced the word “buildings,” was used in the act of 1908 with the intention of broadening rather than restricting the operation of the statute, so far as personal property is concerned, and to include not only moneys and credits but all other personal property of such institution. This would of course be equally clear as to the provision in the General Code. Prior to the act of 1908, the only reference to personalty was as to “moneys and credits.” Therefore, it might well have been doubted whether chattels, such as live stock, etc., or stock in foreign corporations which belonged to the institution by bequest, or otherwise, were exempt. By changing the word “buildings” to the word “property” that doubt was removed. The word “buildings” and the phrase “moneys and credits” are retained in Section 5354, General Code, relating to armories, while the word “property” is retained in Section 5353, which is the only section that relates to institutions of public charity only.
Upon rules of construction which are well settled, where the general statutes of the state are revised and consolidated, there is a strong presumption that the same construction which the statute had before revision should be applied to the enactment in the revised form, although the language may have been changed. The State, ex rel., v. Com *248 missioners, 36 Ohio St., 326; Heck v. State, 44 Ohio St., 536; The State, ex rel., v. Stockley, 45 Ohio St., 308; Conger et al. v. Barker's Admr., 11 Ohio St., 1; German American Ins. Co. v. McBee, 85 Ohio St., 173.
As stated in The State, ex rel., v. Commissioners, supra, the court is warranted in changing the construction given to a statute which has undergone revision, only when the intent of the legislature to make such change is clear, or the language used in the new act plainly requires such change of construction to be made.
The language of the act of April 2, 1906, providing for the codifying commission, “for thé revision and consolidation of the statute laws of the state,” indicates the intention of the legislature: “The said commissioners shall bring together all the statutes and parts of statutes relating to the same matter, * * * making alterations to harmonize the statutes with the constitution as construed by the courts, reconcile contradictions, supply omissions, and amend imperfections in the original acts, so as to reduce the general statutes into as concise and comprehensive a form as is consistent with clear expression of the will of the general assembly, rejecting all equivocal and ambiguous words, and circuitous, and tautological phraseology.”
In the light of these suggestions we are not able to say that it is clear that the legislature at the time of the codification intended to change the law .as it had theretofore for so long a time existed. If, in the codification, in the effort to put the law into “concise and comprehensive form,” the word *249 “property” was used with the intention of including only such personalty as was previously exempt, it follows that it would comprehend within its meaning moneys and credits, for these were previously exempt. On the other hand, if the word “property” shall be held to mean all personalty of whatever character, it is equally clear of course that moneys and credits are included.
Many authorities are referred to in the briefs of able and diligent counsel on both sides, and much light has been thrown upon the general principles involved. An examination of them discloses that many states have pursued the same policy in reference to the taxation of the property of such institutions that Ohio has. In view, however, of the well-understood meaning of the term “institutions of purely public charity,” as consistently defined by this court for so long a time, and of the fixed legislative policy of the state touching the subject for the same period, which have created what may well be regarded as a rule similar to a rule of property concerning institutions of this character, we have preferred to draw our conclusion in this case from the situation peculiar to this state. We think it manifest that there is ample justification for the contention that those in charge of such institutions, as the plaintiff in this case, have been led to invest the funds provided for their maintenance with the understanding, and while relying on the fixed policy and law of the state, that they were not taxable. It would seem that this is a most appropriate case for the application of the rule stare decisis. Uniformity, certainty and sta *250 bility in the law are salutary results always to be sought, and when the highest court of the . state has given a construction to a constitutional provision, which has been accepted and acted on by the legislature throughout a long period, it should not lightly be set aside. The change contended for here is so radical that the intention of the legislature to make it should be clearly manifested. This revolutionary result is avoided by following rules of interpretation which are familiar and which have been strengthened and sanctioned by long experience. It has been the policy of this state, as well as of the other states, to encourage institutions of this nature and to give full recognition to the public benefit that they confer. Their astonishing growth and the extension of their fields of endeavor have been a source of pride and satisfaction to our people. This is so because it is a condition that is peculiar to this country.
Mr. Bryce in his American Commonwealth, Vol. 2, 481-482, quotes from an address by President Eliot as follows: “The successful establishment and support of religious institutions — ? churches, seminaries, and religious charities — upon a purely voluntary system, is an unprecedented achievement of the American democracy. * * * The endowment of institutions of education, including libraries and museums, by private persons in the United States is a phenomenon without precedent or parallel, and is a legitimate effect of democratic institutions.”
As already observed, the constitutional provision under inquiry here was amended in September, *251 1912. For the phrase “institutions of purely public charity!’ there is substituted the- phrase “institutions used exclusively for charitable purposes.” Widely different views are entertained concerning this amendment.
On the one hand, that as now used the word “institutions” must be given a much more restricted meaning, and that the exemption must be confined to the physical property or establishment which is used for the purposes stated.
On the other hand, the view in effect is that the purpose of the change was not to restrict but to enlarge the permissive power of the legislature; that the framers of the. amendment and the people will be presumed to have used the word “institution” in view of the well-defined meaning that had been given to the term by the legislature and by the adjudications of this court, and that the intention was to grant to the legislature the permissive power to extend exemptions to the property of associations which were not institutions of “purely public” charity, but which nevertheless devoted themselves “exclusively to charitable purposes,” such as the great fraternal organizations which provide and maintain homes in Ohio for their aged and infirm members, their widows and orphan children. Much of the charitable work of these organizations would have to be done by the state tself but for them.
This view is also supported by a consideration of the debates of the constitutional convention concerning this change.
*252 As stated in the beginning, however, the construction of that amendment is not involved in this case, and the question is not now decided.

Judgment affirmed.

Donahue, Wanamaker, Matthias and Jones, JJ-, concur.
Nichols, C. J., and Newman, J., dissent.