Johnson, J.
The defendant in error contends that its real estate described in the petition is exempt from taxation by the provisions of Sections 5364 and 5353, General Code.
The pertinent part of Section 53'64 is as follows: “Real or personal property belonging to # * a religious or secret benevolent organization maintaining a lodge system # * * shall not be taxable, and the trustees of any such organizations shall not be required to return or list such property for taxation.”
Section 5353, General Code, reads: “Lands, houses and other buildings belonging to a county, township, city or village, used exclusively for the accommodation or support of the poor, or leased to the state or any political subdivision thereof for public purposes, and property belonging to insti *140 tutions of public charity only, shall be exempt from taxation. ’ ’
Section 2, Article XII of the Constitution, prior to the amendment in September, 1912, contained the following provisions: “Laws shall be passed, taxing by uniform rule, all moneys, credits, investments in bonds, stocks, joint stock companies, or otherwise; and also all real and personal property according to its true value in money * * * but burying grounds, public schoolhouses, houses used exclusively for public worship, institutions of purely public charity, * * * may, by general laws, be exempted from taxation.”
In September, 1912, that section of the constitution was amended. The amendment changed the phrase “institutions of purely public charity” and substituted for it the phrase “institutions used exclusively for charitable purposes,” and provided that they may, by general laws, “be exempted from taxation. ’ ’
In Myers, Treas., v. Benjamin Rose Institute, 92 Ohio St., 238, the same section of the constitution, as it stood prior to the amendment in September, 1912, was involved, and the phrase “institutions of purely public charity” was considered.
The decisions of this court touching the subject were examined and it was found that it has been constantly recognized and held by this court that the phrase “institutions of purely public charity” was a broad one, and that the terms might be applied by the legislature to the organization which administered the charity, or to the establishment, the physical property or buildings, in which its oper ations were carried on.
*141 “The term ‘institution’ is sometimes used as descriptive of the establishment or place where the business or operations of a society or association is carried on; at other times it is used to designate the organized body. * * * As used in the constitutional provision, the term may be applied by legislation in either sense.” Gerke, County Treas., v. Purcell, 25 Ohio St., 229, 244.
See also Humphries, Auditor, v. Little Sisters of the Poor, 29 Ohio St., 201; Cleveland Library Assn. v. Pelton, Treas., 36 Ohio St., 253; Davis, Auditor, v. Cincinnati Camp Meeting Assn., 57 Ohio St., 257, and Little, Treas., v. United Presbyterian Theological Seminary, 72 Ohio St., 417.
The change in the respects referred to made by the amendment in 1912 to this section was discussed in State, ex rel. Greenlund, v. Fulton, Secy. of State, 99 Ohio St., 168. Beginning at page 183 it is there said:
“This phrase [institutions of purely public charity] was included in the original section as adopted in the Constitution of 1851. Prom time to time, covering a period of over 60 years, it had received the consideration of this court in a number of cases, and the disposition of the general assembly was towards the passage of laws enlarging exemptions which had been permitted under this provision. Serious question as to the extent of exemptions allowable under this clause began to be raised.
“At the time of the making of the original constitutions the provision named was doubtless sufficient to meet the requirements. As the state grew and expanded new relations grew up. There came to be great benevolent and fraternal societies and orders *142 in our midst, which, maintained hospitals, homes and institutions for the care and maintenance of their aged and infirm members, their widows and orphan children. But for them, much of the charitable work of these organizations would have to be done by the state itself.
“This phase of the development of our social fabric is only one of many gratifying and similar elements in our growth. * * *
“When the Constitutional Convention met in 1912, in response to this great benevolent spirit and to a compelling sense of justice toward those maintaining such institutions,. the phrase ‘institutions of purely public charity’ was changed so that it should read ‘institutions used exclusively for charitable purposes.’ This clause includes the institutions to which we have referred. They are, in many cases, not purely public charities, yet they devote themselves exclusively to charitable purposes. Under the 1851 provision they would not be entitled to the exemption. Under the 1912 provision, of course, they would. ’ ’
The pertinent part of Section 2, Article XII of the Constitution as now in force, is as follows: “Laws shall be passed, taxing by a uniform rule, all moneys, credits, investments in bonds, stocks, joint stock companies, or otherwise, and also all real and personal property according to its true value in money, * * * institutions used exclusively for charitable purposes, public property used exclusively for any public purpose, and personal property, to an amount not exceeding in value five hundred dollars, for each individual, may, by general laws, be exempted from taxation.”
*143 That section enjoins the legislature to enact laws taxing by a uniform rule all property at its true value in money with .the right to exempt the property stated.
It is well determined that this section is a limitation on the general power to tax conferred by the first section of Article II of the Constitution, and unless tax laws have been enacted which include the property here in question it is not taxed. It is of course conceded that taxing statutes are to be construed strictly in favor of the citizen and against the taxing authority.
Section 5328, General Code, passed pursuant to the mandatory requirement of Section 2, Article XII of the Constitution, just referred to, contains the following provision: “All real or personal property in this state, belonging to individuals or corporations, and all moneys, credits, investments in bonds, stocks, or otherwise, of persons residing in this state, shall be subject to taxation, except only such property as may be expressly exempted therefrom.” It will thus be seen that any exemption must be clearly and expressly stated in the statute.
In Lee, Treas., v. Sturges, 46 Ohio St., 153, it is said, at page 159: ‘ ‘ For every presumption is in favor of that construction of the law which gives effect to the requirement of the section of the constitution referred to,” and, further, that “where an exception or exemption is claimed, the intention of the general assembly to except must be expressed in clear and unambiguous terms. * * * ‘At the outset every presumption is against it. A well-founded doubt is fatal to the claim. It is only where the terms of the concession are too explicit to *144 admit fairly of any other construction that the proposition can be supported.’ Railway Co. v. Supervisors, 93 U. S., 595; Tucker v. Ferguson, 22 Wall., 527. Intent to confer immunity from taxation must be clear beyond a reasonable doubt, for, as in case of a claim of grant, nothing can be taken against the state by presumption or inference.”
In view of these constitutional and statutory previsions and the decisions of this court construing them, is the real estate of the defendant in error exempt from taxation? Is it shown by the record that it is an institution used exclusively for charitable purposes?
The pleadings make a direct issue upon that question of fact. The only witness called in the case was the secretary of the order. After some preliminary questions he was asked:
“Q. What is the property used for? A. Fora club room and lodge room purposes and social gatherings of the members.
“Q. What are its sources of income? A. From dues and assessments from the members, and socials and bazaars and picnics.
“Q. What is done with the income, or with the funds it receives? A. Our funds are divided in three different ways. We have a benefit fund, a general fund, and a social fund. The benefit fund is built up from forty-five per cent, of the dues received from memberships,. The general fund is made up from fifty-five per cent, of the dues received from the membership, and any donations made directly to this fund, or from any other source, made directly to this fund, such as if we were receiving rent, and so forth, and assessments from the members; and *145 the social fund is derived from entertainments that we have, and donations.
“The benefit fund is disbursed for sick benefits and death benefits, and the per capita tax to the Grand Aerie.
‘ ‘ The general fund is used for overhead expenses, such as paying the aerie’s physician’s salary, for his services rendered to the membership, which is free of charge to the membership.
“Q. Is it confined to just to the members? A. No, sir; to the widows and orphans and all who are dependent upon the members who are affiliated with the aerie; and the secretary’s salary, and officers’ salaries, and supplies., and so forth, and public donations.
“Q. The social fund is used for what purpose? A. It is used for public donations. In its entirety, it is used for charitable and public donations, and for anything along that line that the aerie votes upon to disburse.”
On cross-examination he testified:
‘ ‘ Q. What is the nature of the lower part of your building? A. There are recreation and reading rooms.
“Q. How is it furnished? A. We just have chairs — rocking chairs and straight back chairs.
“Q. Have you billiard tables? A. Pool tables.
“Q. They are for the use of the members? A. Yes, sir; and their friends.
“Q. Others who come there are supposed to come at the invitation of the members? A. Yes, sir.
“Q. The public is. not admitted indiscriminately to use the tables? A. "Well, a member brings his friends in.
*146 “Q. Some of the social fund goes for the purpose of lodge banquets and entertainments? A. Yes sir.
“Q. You have banquets and entertainments for the members and their families and friends? A. Yes sir.”
From this undisputed evidence we are clearly convinced that it cannot be said that the defendant in error (and the real estate described in the petition) is an “institution used exclusively for charitable purposes.” It would not be competent for the legislature to enact a statute exempting the property of the organization from taxation unless it was shown to be an institution used exclusively for charitable purposes. The constitution itself determines the question in this case, in the light of the undisputed evidence as to the nature of the defendant in error and the use made of its property.
What has been said would be sufficient to dispose of the case we have before us. However, the defendant in error relies on statutory provisions. Those provisions are included in Section 5364, General Code, viz.: “Real or personal property belonging to * * * a religious or secret benevolent organization maintaining a lodge system * * # shall not be taxable.” And in Section 5353, General Code, viz., “property belonging to institutions of public charity only, shall be exempt from taxation. ’ ’
Section 5364, General Code, was enacted before the adoption of the amendment in 1912, but it is contended by the defendant in error that even if the quoted provision in that section was unconstitutional when enacted, because it covers institutions not of purely public charity, yet it would be valid under *147 the amended section of the constitution, and that it is preserved by the schedule (Section 20) adopted in 1912, which provides that “All laws then in force, not inconsistent therewith shall continue in force until amended or repealed. ’ ’
It is declared in Sutherland on Statutory Construction (2 ed.), Section 107, that an after-acquired power can not ex proprio vigore validate a statute void when enacted.
And in the recent case of Newberry v. United States, 256 U. S., 232, 254, decided in May last, the federal supreme court held that “the criminal statute now relied upon [Federal Corrupt Practices Act] antedates the Seventeenth Amendment and must be tested by powers possessed at the time of its enactment. An after-acquired power can not ex proprio vigore validate a statute void when enacted.”
But even if the section as it now stands were reenacted it could not exempt the property of any organization not used exclusively for charitable purposes. The same observation must be made concerning the provisions of Section 5353, General Code, which was enacted after the amendment in 1912, viz., “property belonging to institutions of public charity only, shall be exempt.” Such property can only be exempt under the constitution when used exclusively for charitable purposes.
Under the amendment adopted in 1912, the hospitals, homes, asylums and institutions for the care and maintenance of the aged and infirm members, their widows and orphan children, of the great benevolent and fraternal societies which have grown up in our midst, in the last fifty years, may of course *148 be exempt from taxation by general laws to that effect. Such, institutions while not purely public charities, yet are devoted exclusively to charitable purposes.
As we have shown, there has been a growing disposition by the constitution-makers and the legislature to exempt property devoted to that end. It is not only necessary that the exemptions be made by general lawSi, but the laws must conform to the constitution. The legislature should exercise its authority to the fullest extent within the constitution to encourage these worthy organizations in the accomplishment of their object, but it is not within the court’s power to extend exemptions beyond the authority granted by the constitution or the acts of the legislature passed pursuant thereto. The constitution is the superior law and the ultimate criterion. The court’s sole duty is to enforce it.
Therefore, the judgment of the court of appeals will be reversed and the cause remanded to that court with instructions to dismiss the petition of the plaintiff below.

Judgment reversed.

Marshall, C. J., Hough, Wanamaker, Robinson. Jones and Matthias, JJ., concur.