## CITY OF INDIANAPOLIS *v.* STURDEVANT.

BOARD OF EQUALIZATION.—The board of equalization of a city has no power to determine whether property assessed is taxable or not.

SAME.—*Semble* that its power extends only to equalizing valuations made by the assessors.

CONSTITUTIONAL LAW.—EDUCATION.—The intention of. section 1 of article 10 of the constitution of 1851, was to leave the legislature at liberty to encourage the establishment of institutions of learning, by exempting them from the usual burden of taxation, whether the enterprise might be undertaken on public or private account.

SAME.—This immunity to the founders of such institutions is not in conflict with the twenty-third section of the bill of rights.

TAXATION.—EXEMPTION FROM.—A building was erected upon a lot in *Indianapolis*, for the use of a literary and scientific institution, and the premises were kept and appropriated for that use, a corps of teachers being employed in instructing large numbers of pupils in ancient and modern languages, in the various sciences, and in the branches of education usually taught in colleges. The institution was conducted on private account, and the earnings were applied to the individual benefit of the proprietor.

*Held*, that under the act of 1861, the proprietor was exempt from taxation.

SAME.—By the term "institution," as employd in said act, is meant a permanent establishment, in contradistinction to an enterprise of a temporary character.

APPEAL from the *Marion* Circuit Court.

FRAZER, J.—This was a suit by *Sturdevant* to recover $81 90, paid as city taxes, under protest, to prevent the sale by the treasurer of the property upon which the taxes were assessed. The property taxed is generally known as "*McLean's* Female Institute," a plat of ground in *Indianapolis*, less than an acre in extent, with the buildings thereon, which were erected for the use of a scientific and literary institution. *McLean*, the original proprietor, for ten years used the premises for that purpose, until his death, which occurred in 1861, instructing young ladies in the ancient and modern languages, in the various sciences, and in all the branches of education usually taught in colleges, and was assisted by a corps of competent teachers. Since *McLean's* death, *Sturdevant*, who became the owner of the property, has devoted it solely to the same use.

The complaint, alleging substantially the foregoing facts, was met below by a demurrer for the want of sufficient facts to constitute a cause of action, and for lack of jurisdiction in the Circuit Court, which was overruled, and the questions thus made are before us.

An answer was also filed, alleging that for board and tuition of pupils in the school, a price was charged against each pupil, and received by the plaintiff for his own benefit, and that from his business, thus conducted, he derived large profits, which he appropriated to his own use. To this a demurrer was sustained, and the question raised thereon is also presented here.

The jurisdiction of the Circuit Court is questioned, because the city charter provides for a board of equalization to hear and decide all complaints in reference to the assessment roll, and it is suggested that the original jurisdiction over the question is exclusively in that board, and that the plaintiff is concluded by having failed to make application for relief before that tribunal.

We cannot concur in this proposition. The power of the board of equalization seems to extend only to equalizing valuations made by the assessor, and no authority is given to determine whether or not property assessed is taxable. 1 G. & H., § 44, p. 228.

Article 10, section 1, of the constitution, provides for a uniform and equal taxation on all property, "excepting such only for municipal, educational, literary, scientific, religious, or charitable purposes, as may be specially exempted by law."

In 1861, the legislature enacted that the following property should be exempt from taxation:

"Every building erected for the use of any literary, benevolent, charitable, or scientific institution, *by any individual or individuals, association or corporation*, or erected for the same purpose by any town, township, or county, and the tract of land on which such building is situated, not exceeding twenty acres; also, the personal property belong-

ing to any institution, town, township, city or county, and connected with, or set apart for, any of the purposes aforesaid." Acts 1861, p. 170.

The education of the people is an object of the very greatest consequence in a government like ours. It is absolutely essential to its existence; and this has been received as an axiom by all enlightened statesmen, at every period since we have been a nation. It largely pervades the constitutio.. of the State, and its accomplishment has uniformly been a leading and cherished purpose of our legislation. The evident intention of the clause of the constitution above quoted, was to leave the legislature at liberty to encourage the establishment of institutions of learning, by exempting them from the usual burden of taxation, whether the enterprise might be undertaken on public or private account. The language is as comprehensive as it is possible to make it. Nor would such immunity to all individuals founding such institutions in any respect contravene the twenty-third section of the bill of rights, for all individuals would be at liberty, upon the same terms, to claim the exemption.

It remains, then, only to consider whether the legislature has, by that portion of the act of 1861 above copied, used language which will exempt the plaintiff's property from taxation.

The appellant insists that the act cannot have that effect, for the reason that the seminary in question is not a *literary* or *scientific* institution, and *Indianapolis* v. *McLean*, 8 Ind. 328, is relied upon as an authority directly in point. We do not so regard it; but if it were so, we should probably feel it to be our duty to re-examine the reasoning of that case. But we do not perceive that that case in any degree touches the question now under consideration. The question there was whether the evidence was sufficient to support the finding, and it was held that it was not, because it did not show that the school was a literary or scientific institution. But in the case now in hand, the

questions are all raised upon the pleadings, by demurrer, and the facts as alleged must be regarded as true. The complaint expressly avers that the buildings were erected "for the use of a literary and scientific institution," and that the premises have ever since been "kept and appropriated for the use of a literary and scientific institution," in which a corps of teachers have been engaged in teaching large numbers of pupils, "in ancient and modern languages, in the various sciences, and in all the branches of education usually taught in colleges." These averments can leave no question that the establishment is a literary and scientific institution, and consequently within the express letter of the statute. It follows that the demurrer to the complaint was correctly overruled.

The answer introduces into the case the additional fact that the institution was conducted on private account, and the earnings of it applied to the personal benefit of the individual proprietor. We have in part anticipated the question thus presented, by announcing the opinion that the constitution confers power upon the legislature to exempt from taxation the property of an individual which is devoted to educational, literary and scientific purposes. Has the legislature exercised this power? The act of 1861 amends the act of 1852 by introducing the words in italics. If there was doubt before, it seems to us that there can be none since the act of 1861. We are unable to conceive of any object which could be attained by the amendment, but to make the matter perfectly clear. "Every building erected for the use of any literary or scientific institution, *by any individual or individuals, association or corporation,*" is exempted from taxation. It would be difficult to employ language which would more clearly cover the case before us.

Nor does it seem to us that it will result, as is apprehended by counsel, that every private school room, or building containing such a school room, would be exempt from taxation. To obtain that immunity, it must have

been "erected for the use of a literary or scientific *institution.*" This implies more than the application of the property for the time being, merely, to educational uses. By the term "institution" is understood a permanent establishment, as contradistinguished from an enterprise of a temporary character. The statute could not be held to comprehend the latter, for it would be in no just sense an institution.

The judgment is affirmed, with costs.

*B. K. Elliott,* for appellant.

*D. McDonald* and *A. G. Porter,* for appellee.