## A BANKING PARTNERSHIP NOT A BANKING INSTITUTION.

Common Pleas Court of Hamilton County.

STATE, EX REL GUILBERT, AUDITOR, v. JOHN KILGOUR ET AL.

Decided, April 22, 1909.

*Banks and Banking—Banking Partnership not a Banking Institution—*
*And not Required to File Report with State Auditor—Granting*
*Leave to Amend Original Petition Saves the Running of the Stat-*
*ute of Limitations—Where Suit has Been Brought against a De-*
*cedent the Claim Need not be Presented to his Administrator—Leave*
*to File an Amended Petition Conclusive on Another Judge as to*
*Parties and Averments—Sections 3817, 3818 and 99 O. L., 269.*

1. "Institutions" comprehends "corporations" or "associations" estab-
   lished by law, having the attributes of permanency, as distinguished
   from the temporary establishment of individual or partnership
   effort, together with officers and members; hence, a banking part-
   nership is not an "institution" within the meaning of Sections 3817
   and 3818, Revised Statutes, requiring "every banking institution,
   or corporation engaged in the business of banking" to file certain re-
   ports, verified by its officers.

2. Sections 108 and 109 of act 99 O. L., 269, the former requiring "every
   banking company, savings bank, * * * and every person or
   co-partnership doing a banking business," to make certain reports,
   and the latter requiring the president, vice-president, cashier, secre-
   tary or treasurer to verify such reports, neither expressly nor by
   necessary implication require a banking partnership to make re-
   ports as required by Sections 3817 and 3818, Revised Statutes.

3. Granting leave to file an amended petition implies, necessarily, that
   no new action was commenced by filing such pleading; hence, the
   bar of the statute not having run against the cause of action set
   forth in the original petition, will not bar recovery under the
   amended petition.

4. An action having been commenced in the life of a party defendant
   upon revivor in the name of his personal representative after de-
   fendant's death no presentation to such representative is required.

5. Leave to amend a petition by substituting new parties having been
   granted by a common pleas judge, it appearing that a copy of the
   amended petition was attached to the motion to amend, the ques-
   tion of the sufficiency of the amended petition as to new parties
   plaintiff and defendant, and averments necessarily passed upon in
   granting the motion will not be considered by another judge of
   the same court upon a subsequent hearing upon the amended peti-
   tion.

*Kinkead, Rogers & Ellis,* for plaintiff.
*E. W. Kittredge* and *Jacob Shroder,* for defendants.

GORMAN, J.

Heard on demurrer to petition.

This is an anction brought originally by W. D. Guilbert, Auditor of the state of Ohio, against the Franklin Bank, a partnership alleged to have been engaged in the banking business prior to the time of the commencement of the action in the city of Cincinnati, asking for a judgment against the Franklin Bauk in the sum of $3,120 for the benefit of the state of Ohio, on account of penalties alleged to have been due and payable at the date of the commencement of the action because of the failure of said bank to make a report to the plaintiff Guilbert, as Auditor of State, showing the condition of said bank at the close of business, March 5, 1905, as provided by Sections 3817 and 3818, Revised Statutes of Ohio,, as amended April 23, 1904. Such proceedings were had in the case, as that an answer was filed setting up that John Kilgour, J. D. Brannon and Charles H. Kilgour were partners doing business under the firm name of the Franklin Bank, but denied that they were engaged in the banking business; and as a second defense set up that they were brokers as defined by Sections 3821-20, Revised Statutes of Ohio. As a third defense the defendants set up that they have no officers to make a report required by Sections 3817 and 3818, Revised Statutes, and that they are neither a banking "institution" or "corporation" and were not obliged to make any report as required by the provisions of said sections.

On the day the case was called for trial before a jury, the defendant moved to dismiss the cause on the ground that the plaintiff had no authority to bring or maintain the action in his name as plaintiff.

The motion was submitted to Judge Otto Pfleger, and after a thorough and vigorous presentation of the question raised by the motion, Judge Pfleger in an exhaustive opinion, *Guilbert* v. *Bank,* 5 N. P.—N. S., 209, held that the motion was well taken, but plaintiff's counsel in the meantime, having asked leave to amend by substituting as plaintiff the state of Ohio instead of W. D. Guilbert, auditor, and as defendants John Kilgour, J. D.

Brannon and Bayard L. Kilgour and Albert J. Becht, as administrators of the estate of Charles H. Kilgour, deceased, instead of the Franklin Bank, Judge Pfleger, on December 31, 1908, his last day in office, granted leave to file the amended petition now under consideration, and the same was duly filed on said day. The caption of the original case is entirely changed by the amendment, and both the parties, plaintiff and defendant, are changed and new parties substituted. The prayer of the original petition was for a judgment against the Franklin Bank in favor of W. D. Guilbert, Auditor of the State of Ohio, for the benefit of the state of Ohio in the sum of $3,120 and costs.

The prayer of the amended petition is for a judgment in favor of the relator in the name of the state of Ohio and for the benefit of the state of Ohio and against John Kilgour, J. D. Brannon and Bayard L. Kilgour and Albert J. Becht, as administrators of Charles H. Kilgour, deceased, successors in interest of the said the Franklin Bank in the sum of $3,120 and costs.

To this amended petition each of the defendants has filed a separate demurrer, but each demurrer is based on the same grounds, to-wit:

1. The amended petition does not state facts sufficient to constitute a cause of action against the demurring defendant.

2. The alleged cause of action in said amended petition is barred by the statute of limitations.

3. The separate alleged causes of action against the several defendants are improperly joined.

The points raised by these demurrers were ably and exhaustively argued orally *pro* and *con,* and exhaustive and well prepared briefs have been submitted to the court for its information. Indeed, it is seldom that a case has been so well prepared and presented by such learned and distinguished counsel on both sides. The court is greatly indebted to counsel for the valuable assistance rendered in their oral arguments and briefs, and can only say that if the conclusions arrived at are not correct, counsel may at least rest assured that the court has given the case his best consideration, and so far as the court is able to discover, counsel are not at fault in the presentation of the case.

At the outset the court is confronted by the decision of Judge Pfleger on the application of plaintiff's counsel for leave to file

his amended petition.   In order to grant leave to file this pleading, Judge Pfleger found, and must necessarily have found, that the parties defendant in the amended petition, as well as the new party plaintiff, the state of Ohio, are the real parties in interest and the proper and necessary parties to this action.   It appears that attached to the motion for leave to file this amended petition was a copy of the pleading sought to be filed, and therefore the court, Judge Pfleger, was fully advised of the new parties plaintiff and defendant, as well as every averment contained in the amended petition as filed.   I am, therefore, of the opinion that I ought not to consider any question in this case involved, or necessarily involved, in Judge Pfleger's decision, and which he must necessarily have passed upon in order to grant leave to file the amended petition.

This leaves but the following points raised by the demurrers of the defendants to be considered and passed upon by me, viz.:

1.   Was the Franklin Bank a partnership, doing business under that name in Ohio, for one year prior to June 24, 1905 (the date of the filing of the petition), a "banking institution" within the meaning of Sections 3817 and 3818, Revised Statutes?

2.   Were Sections 3817 and 3818, Revised Statutes, repealed by Section 120 of the act of May 1, 1908, known as the Thomas act, so as to bar a recovery in this action against the defendants?

3.   Is the cause of action set up in the amended petition barred by the statute of limitations, Sections 6805 and 4983, Revised Statutes?

As to the first proposition, it is averred in the amended petition, and for the purpose of the demurrer must be admitted to be true, that the Franklin Bank was at the time of the commencement of this action and continuously during the year immediately prior to March 6, 1905, a banking institution, and during said times was *engaged in the business of banking in Ohio*.   We must therefore assume for the purposes of the demurrer that the Franklin Bank was engaged during said times in the business of banking in Ohio.

But was it a "banking institution" within the meaning of Sections 3817 and 3818, Revised Statutes?

An averment that it was a "*banking institution*" is not an averment of a conclusion of fact, but a conclusion of law, and

therefore the demurrers do not admit this conclusion of law, and the court may test this averment, to determine whether or not the Franklin Bank is an "institution" within the meaning of the said sections.

The question of its business is eliminated. Its business is that of banking so far as the inquiry now under consideration is concerned.

It is urged with great force by counsel for the defendants that the Franklin Bank was not a "banking institution" or "corporation" and that inasmuch as these are the only entities designated in Sections 3817 and 3818, Revised Statutes, the Franklin Bank was not obliged to make the reports required to be made under those sections. The question of whether or not the defendants were engaged in banking is a question of fact and therefore the reference to the section of the statutes defining, brokers can not avail at this time. If the Franklin Bank was engaged in a brokerage business and not in the banking business, that issue must be raised by answer and not by these demurrers.

It is not averred that the Franklin Bank was a corporation and therefore we need only inquire whether or not a partnership may be in law an "institution," for if it may be, then the Franklin Bank is a *"banking institution,"* at least for the purposes of the demurrers.

It is contended that the use of the words, "banking institution" in Section 3817 indicates that a *body* of persons, organized under the laws of the state was thereby intended to be described, and that this construction is borne out by the further facts that in this very Section 3817 it is provided that *"institutions"* known as building and loan associations organized and conducted under the statutes for such *institutions* are not required to make reports; and further that the report required must be verified by the oath, etc., of one or more of the officers of the institution as provided in Section 3818, Revised Statutes. It is pointed out that neither individuals nor partnerships can have or do have officers, and therefore applying the rule of *ejusdem generis,* institutions must mean and have reference to corporations or associations having officers.

"Institution" is defined in 16 Am. & Eng. Enc. Law (2d Ed.), 822, 823, as follows:

"The term 'institution' is sometimes used as descriptive of the establishment or place where the business of a society or association is done or its operations are carried on, and at other times it is used to designate the organized body."

Citing: *Indianapolis* v. *Sturdevant*, 24 Ind., 391; *Appeal Tax Ct.* v. *St. Peters Academy*, 50 Md., 321, 345; *Gerke* v. *Purcell*, 25 Ohio St., 229, 244; *Humphries* v. *Little Sisters of Poor*, 29 Ohio St., 201; *Morris* v. *Lone Star Chap. No. 6 R. A. M.*, 68 Tex., 698.

The above definition in 16 Am. & Eng. Enc. Law, 822, 823, was taken verbatim from the case of *Gerke* v. *Purcell, supra,* page 244.

The court in that case had under consideration Article XII, Section 2, of the Constitution of 1851, which provides among other things for the exemption from taxation of "institutions of purely public charity," and while the court therein held that the word "institution" as used in the section of the Constitution and the act of the Legislature under consideration, had reference to the establishment or place where the operations of the society or association are carried on, or the property of the "institution," because the property was to be affected, nevertheless the court discusses the use of the word as designating the organized body known as the *society* or *association*.

In the case of *Humphries* v. *Little Sisters of Poor, supra,* the court again had under consideration the same section and article of the Constitution and the same taxation statute as were involved in the case *Gerke* v. *Purcell, supra.* The court in *Humphries* v. *Little Sisters of Poor* defined institution when used to designate the organized body in the second paragraph of the syllabus and on page 206 as follows:

"The word 'institutions,' in the sixth clause of Section 3 of the tax law (of 1859) is used to designate the *corporation* or *other organized body instituted to administer the charity,*" etc.

It would seem from these two authorities that the idea in the mind of the Supreme Court of this state of the word *"institution"* presents either a *corporation* or a *permanently organized society or association;* at least, this appears to be the court's conception of the word when used in connection with taxation or

exemption from taxation and as used in the section and article of the Constitution above referred to. The word "institution" is used in several places in the Constitution of 1851, viz., Article III, Section 20; Article VII, Sections 1 and 2. But in every instance it is used in the sense of a permanent organized body or the place where the organized body administers the charity or trust, or dispenses the benefits for which the association, society or corporation is organized, and in all but one of these sections the *officers* of the institution are mentioned.

In the case of *Dodge* v. *Williams,* 46 Wis., 100, the court said:

"The words 'institution' and 'organized' appear to imply an incorporation. A private school or college may by courtesy be called an *'institution'* according to the American fashion of promoting people and things by brevet names. But in legal parlance an *institution* implies foundation by law, by enactment or prescription. One may open and keep a private school; he can not properly be said to *institute* it."

See, also, *Nobles Co.* v. *Hamline University,* 46 Minn., 316, where the court among other things says:

"The term *'institution,'* although sometimes used as descriptive of the establishment or place where a business is carried on, properly means an association or society organized or established for promoting some specific purpose." * * *

See, also, *Montana Catholic Missions* v. *Lewis & Clark Co.,* 13 Mont., 565; *Trustees Kentucky Female Orphan School* v. *Louisville,* 100 Ky., 470, 486.

In all these cases where the word was under consideration the idea conveyed to the minds of the courts was a society, corporation or association established by law or organized and instituted as a permanent thing having officers and members, and possessing the attribute of immorality, or at least, indefinite existence, and unaffected by the death of one or more of its members. In no sense where the property or place is not referred to, but the agency or instrumentality, is there any intimation that an institution is an individual or partnership. If the institution, speaking of the body, could be an individual or partnership, then the death of the individual or of one or more of the partners would be the death of the *institution,* and the idea of permanency

could not be conceived as an attribute of an institution. Yet the very name *institution* carries with it the idea of permanency as distinguished from the temporary establishment of an individual or partnership effort.

But it is urged by counsel for plaintiff that the mere fact that the Legislature provided in Section 3817, Revised Statutes, that "banking institutions" as well as "every corporation engaged in the business of banking" shall make reports to the Auditor of State, shows that the Legislature intended to reach banking concerns other than corporations, and that the use of the words "banking institution" and "corporation engaged in the business of banking" shows that the Legislature thus recognized the distinction between a "banking corporation" and a "banking institution."

This argument appears plausible, but a reference to the statute (Sec. 3817) shows that the words are not used in the conjunctive but in the disjunctive. The language is: "Every banking institution, *or* corporation engaged in the business of banking, * * * shall make not less than two reports," etc. If the word "*and*" had been used instead of "*or*" then the argument of counsel that the Legislature intended to include two classes of "banking concerns," to-wit, "institutions" and "corporations" would appeal to the mind with irresistible force. The language would then be: "Every banking institution *and* corporation engaged in banking, * * * shall make not less than two reports," etc. But the use of the disjunctive "*or*" furnishes a strong argument in favor of the defendant's contention that "institution" and "corporation" are used to indicate and mean practically the same thing; an association of persons other than an individual or a partnership, engaged in the banking business. And when, in connection with the fact that the word "*institution*" is a broad enough and large enough term to include corporation as well as other organized bodies not corporations, the further fact is considered, that *officers* are to make and verify these reports, the argument advanced by counsel for defendants in favor of their contention is much more potential. The word "officer" and "officers" are inseparately associated with corporations or organized bodies or associations and never with individuals or partnerships.

Furthermore, at the time this legislation embodied in Sections 3817 and 3818 providing for these reports was passed in 1904, the Legislature presumably had in mind the laws relating to banking and the banking business as well as the laws relating to the creation and organization of corporations. Now, the chapter relating to the creation and organization of corporations, both for profit and not for profit, Chap. 1, Title 2, provides, Sec. 3235, that: ''Corporations may be formed in the manner provided in this chapter (Chap. 1) for any purpose for which individuals may lawfully associate themselves,'' etc. This includes banking, and as a matter of fact, most of the banking institutions of the state are organized under this chapter. There must be not less than *five* persons, a majority of whom are citizens of Ohio, to form and organize a corporation, whether for profit or not, and for whatever purpose, under this chapter. See Section 3236, Revised Statutes.

Now under Chap. 16*a,* of this same title, 2, under the free banking act, Sections 3821-64 to 3821-87, Revised Statutes, any number of natural persons not less than *three* may engage in the banking business, etc. These persons who may thus engage in the business being *not less than three* and as many more as the promoters see fit to take in, are not called a *corporation,* but a *banking company.* They are not, as under Chap. 1, Title 2, required to use the word ''company'' or the word ''the,'' and while it may be considered a corporation, such an organization is no place in the statute so designated, but only as a ''company.'' It is not chartered as corporations under Chap. 1, Title 2, but is required to file and record its certificate of organization with the recorder of the county wherein it is to transact its business, and it may have officers as well as directors, and before engaging in business must have 60 per cent. of its stock paid in and a certificate from the Governor, Auditor of State and Secretary of State, to enable it to do business. It is then clothed with the power of a body politic and corporate. This free banking act was on the statute books at the time of the adoption of the Constitution of 1851, and was not repealed until the Thomas act of May 1, 1908 (99 O. L., 292), was passed. Many banking concerns are doing business now in Ohio under this free banking act, and

the court has personal knowledge of two or three banks now doing business in Hamilton county organized under this free banking act within the last *four years*.

Now is it not reasonably probable that it was just such banking concerns as these under the free banking act that the Legislature intended to designate as "banking institutions" to distinguish them from corporations organized under Chap. 1, Title 2, Revised Statutes?

It is not now and was not before the passage of the law of May 1, 1908 (99 O. L., 292), unlawful for an individual or partnership to engage in the business of banking, but unless the Legislature by clear and unmistakable language requires an individual or partnership to make reports of their business, whether the same be a banking business or a grocery business, the duty to make such reports ought not to be required by intendment; nor ought there to be any judicial legislation by reading into the statutes what is not there plainly laid down or *necessarily* implied. The rule applicable to natural persons can not always be applied to corporations which are mere creatures of the legislative branch of the government, and therefore, any reasonable requirements which the creator of these creatures may prescribe, and any rules which the Legislature desires to promulgate as conditions under which corporations and associations which owe their being to the state, may engage in business, can not be questioned so long as there is no taking of property without due process of law. The creator may destroy and may also prescribe the orbit within which its creatures shall move and have their being.

But the application of this rule to natural persons and their lawful callings, occupations and affairs is abhorrent to the spirit of our free institutions and contrary to our sense of natural justice.

By Section 108 of the act of May 1, 1908 (99 O. L., 269), commonly known as the Thomas act, 292, it is provided first that every banking company, savings bank, savings and trust company, safe deposit and trust company, society for savings, or savings society, etc., and every person or copartnership doing a banking business shall make, etc., not less than four reports, etc. Now the words "person" and "co-partnership" were not used

in either Sections 3817 or 3818, Revised Statutes, and from the fact that the Legislature in this recent enactment has included ''persons'' and ''co-partnerships'' among the list of banking concerns and banking houses required to make the reports now to the superintendent of banks, formerly made to the Auditor of State, indicates that ''persons'' and ''co-partnerships'' were exempted from making such reports prior to the passage of the act of May 1, 1908, and it was because the Legislature knew of this exemption, that provision was made for the reports from ''persons'' and ''co-partnerships'' as well as corporations in the act of May 1, 1908.

Now counsel for plaintiff urge that inasmuch as Section 109 of the act of May 1, 1908, provides that such reports shall be verified by the oath or affirmation of the president, etc., and inasmuch as now under this last act by Section 108 ''persons'' and ''co-partnerships'' shall also make the reports, that therefore by necessary implication, ''persons'' and ''co-partnerships'' were required to report under Sections 3817 and 3818, Revised Statutes, because if now the president, vice-president, cashier, secretary or treasurer under Section 109 shall verify the report, and this applies to ''persons'' and co-partnerships'' as Section 108 would indicate, then there is no more inconsistency or incongruity in holding that the words ''one or more of its officers'' used in Section 3818, Revised Statutes, may just as well apply to ''persons'' and ''co-partnerships'' doing a banking business before the passage of the act of May 1, 1908, than to hold as we must necessarily hold that under this last act the words ''president,'' ''vice-president,'' etc., are applicable to ''persons'' and ''co-partnerships'' doing a banking business as well as to corporations.

But a reading of Section 109 of the act of May 1, 1908, discloses that there is no provision for a verification of the report by ''persons'' or ''co-partnerships'' but that the statement or report required to be verified has reference only to a ''banking company, savings bank, society or association above named.'' The words above named have reference to the same institutions named in Section 108 of said act. Section 111 of the act provides that the superintendent of banks may call for special re-

ports from the ''companies,'' ''societies,'' and ''corporation,'' but not from ''persons'' and ''co-partnerships.''

By Section 112, every *company, society* or *association* failing to make or publish the reports required by the act, shall be subject to a penalty of $100 for each day they are delinquent after ten days' notce, but no penalty is imposed on the ''person'' or ''co-pártnership'' doing a banking business, who fails to make the reports. It would seem, therefore, that even now, ''persons'' and ''co-partnerships'' can not be proceeded against for failure to make these reports, although they are specially required so to do by Section 108 of the act, nor are they required to verify their reports so far as the act of May 1, 1908, is concerned, and if this be true under an act which specifically enjoins upon ''persons'' and ''co-partnerships'' the duty of making these reports, how can it be claimed that where ''persons'' and ''co-partnerships'' are not mentioned in the statutes, Sections 3817 and 3818, nevertheless, by implication and intendment, the word ''institutions'' includes ''persons'' and ''co-partnerships'' and requires them to make reports through officers having no existence?

The court is of the opinion that it would be a forced construction to give to the word ''institution'' the meaning contended for by counsel for plaintiff, and that, therefore, the amended petition does not state facts sufficient to constitute a cause of action against the defendants or either of them.

As to the point that the cause of action is barred by the statutes of limitations, I am of the opinion that Judge Pfleger must necessarily have passed upon this question by giving counsel for plaintiff leave to file the amended petition, and I do not feel that I am at liberty to question that decision of Judge Pfleger even if I were disposed to do so.

By giving plaintiff leave to file the amended petition, Judge Pfleger must have considered that no new action was commenced by the filing of the amended petition, but that the amendments allowed related back to the date of the filing of the petition and spoke as of that date. The petition was filed within the statutory time, and if the amendments relate back to the date of the filing of that pleading, then the cause of action set up in the

amended petition was not barred by either the one year statute or the three years' statute.

As to the question of the presentation of the claim of the state against the administrators of Charles H. Kilgour, it appears that this action was commenced in the lifetime of Charles H. Kilgour and if there was a good cause of action against him it was not abated or discontinued by his death, and inasmuch as an answer was filed for him as well as for the other defendants, it would seem that he had thereby entered his appearance before his death; and inasmuch as Section 5012, Revised Statutes, provides that upon the disability of a party, the court may allow the action to proceed by or against his representative or successor in interest; and there was an entry *by consent* of parties made in this case on February 1, 1907, suggesting the death of Charles H. Kilgour and reviving the action in the name of his administrators and ordering it to proceed against them and the other two defendants as provided by Section 5149, Revised Statutes. I am of the opinion that the point involved here as to these facts was settled adversely to the contention of defendants' counsel by the decision of the Supreme Court in the case of *Phoenix Ins. Co.* v. *Cranahan.* 63 Ohio St., 258.

For the reasons stated the demurrers and each of them will be sustained on the ground that the amended petition does not state facts sufficient to constitute a cause of action against the defendants.