Nichols, C. J.
The supreme court has been frequently called upon to interpret the statutes *255 exempting properties from taxation, and quite an array of reported cases on this subject are available.
It is substantially conceded by counsel for the institute that, under any and all of these former interpretations, the real property of Benjamin Rose so trusteed would not be in the exempted class, but it is their contention that, by virtue of the amendment of May 9, 1908, to Section 2732, Revised Statutes, and' more especially of the ratification, on February 15, 1910, of the report of the codifying commission by the general assembly of Ohio, all of the property, both real and personal, so devised to the above-mentioned public charity is wholly exempt from taxation.
The adjudications of this court were all had prior to the amendment of May 9, 1908, the cases, chronologically arranged, being Cincinnati College v. The State, 19 Ohio, 110; Gerke, etc., v. Purcell, 25 Ohio St., 229; Humphries, Auditor, v. Little Sisters of the Poor, 29 Ohio St., 201; Cleveland Library Assn. v. Pelton, Treas., 36 Ohio St., 253; Watterson v. Halliday, Auditor, 77 Ohio St., 150. It is quite evident that but for the amendments to the statutes of May 9, 1908, and February 15, 1910, respectively, exempting property, this action would not have been instituted. An examination of the several tax-exemption statutes is not only necessary for a proper consideration of the case, but is alike interesting and illuminating.
Prior to the adoption of the constitution of 1851, the nature and extent of exemption from tax was wholly a matter of legislative discretion, which was *256 afterwards limited in set terms by the then new constitution. The original statute, under the new order of things, was adopted in 1852 (see 50 O. L., 135) and provided that “All buildings belonging to institutions of purely public charity, together with the land actually occupied by such institutions not leased or otherwise used with a view to profit,” shall be exempted, etc.
■By the revision of 1880, this language was carried into and became a part of Section 2732, Revised Statutes of Ohio.
In 1894 (see 91 O. L., 216) this particular paragraph was amended and made to read as follows: “All buildings belonging to institutions of purely public charity and all buildings belonging to and used exclusively for armory purposes by lawfully organized military organizations which are and shall continue to be fully armed and equipped at their own expense, by law made and subject to all calls of the governor for troops, in case of war, riot, insurrection or invasion, together with the land actually occupied by such institutions and that owned by and used as sites for such armory buildings of said military organizations, not leased or otherwise used with a view to profit, and all moneys and credits appropriated solely to sustain, and belonging exclusively to said institutions and military organization.”
In May, 1908 (99 O. L., 449), a further change was made, and the paragraph then read: “All property belonging to institutions of purely public charity, and all buildings belonging to and used exclusively for armory purposes by lawfully or *257 ganized military organizations which are and shall continue to be fully armed and equipped at their own expense and by law made subject to all calls of the governor for troops in case of war, riot, insurrection or invasion together with the' land actually occupied by such institutions and that owned and used as sites for such armory buildings of said military organizations not leased or otherwise used with a view to profit, and all moneys and credits appropriated solely to sustain and belonging exclusively to said institutions and military organizations.”
In February, 1910, the report of the codifying commission was adopted by the legislature of Ohio, and thereafter the exemption of institutions of purely public charity was entirely disassociated from those of armory organizations, with which they had been classified since 1894, and associated instead with county, township and village infirmaries. Section 5353, General Code. And the exemption of armory organizations was provided for in separate Section 5354, General Code.
An examination of these several enactments will disclose the fact that from 1852 to 1908 the statutes read “All buildings belonging to institutions of purely public charity,” etc., whereas, in 1908, the word “buildings” was changed to the word “property.” It is around the change of the word “buildings” to “property” that counsel for the institute seek to build their case in the first instance.
It must be noted, however, that the language “together with the land actually occupied by such *258 institutions” remains intact in all of the several statutes, commencing with the original act of 1852, down to and including the act of May 9, 1908. If we eliminate from Section 2732, Revised Statutes, as amended May 9, 1908, all reference to armory organizations, we will find it reading as follows: “All property belonging to institutions of purely public charity, * * * together with the land actually occupied by such institutions, * * * not leased or otherwise used with a view to profit,” which is precise in terms with the original act of 1852, excepting the change above referred to of “buildings” to “property.”
It is contended by The Benjamin Rose Institute that in the act of May 9, 1908, the words “together with the land actually occupied by such institutions” have no proper place or significance, for the reason that since the general assembly expressly exempted all property belonging to institutions of purely public charity, this latter phrase was not intended to be and cannot be construed to be a limitation upon the express provisions of the statute.
With this interpretation the court cannot agree. If these words are to be construed as a limitation upon the express provisions of the statute as originally enacted and as amended from time to time, we can find no possible warrant authorizing a different interpretation simply by reason of the substitution of the word “property” for “buildings.”
We feel it to be of significance that these express words of limitation were carried into the acts from 1852 to 1908, inclusive, and are a clear and distinct expression of the legislative will to the effect that *259 only such property as might be actually occupied and used by the institution of purely public charity, subject to the still further limitation that even that property should not be leased or otherwise used with a view to profit, was to be released from its share of the public burden of taxation. The legislature, from the beginning to the time the codifying commission did a little legislating on its own account, has been consistent on the subject.
We now approach a consideration of the question from quite a more difficult angle and go to the main question, involving an interpretation of Section 5353, as passed in February, 1910, upon which counsel for the institute chiefly rely in their effort to exempt this property from taxation. Section 5353 is.as follows:
“Sec. 5353. Lands, houses and other buildings belonging to a county, township, city or village, used exclusively for the accommodation or support of the poor, and property belonging to institutions of public charity only, shall be exempt from taxation.”
We are concerned, of course, only in the interpretation of the latter clause of this section.
It will be observed that neither the phrase “together with the land actually occupied by such institutions,” nor the clause “not leased or otherwise used with a view to profit,” as employed in Section 2732, Revised Statutes, is to be found in Section 5353, General Code, it being stripped to the narrow confines of this language: “Property belonging to institutions of public charity only, shall be exempt from taxation.”
*260 This language should be interpreted by certain rules, one of which is, “where all the general statutes of a state are revised and consolidated, there is a strong presumption that the same construction which the statute received before revision, should be applied to the enactment in its revised form, although the language may have been changed.” The State, ex rel., v. Commissioners, 36 Ohio St., 326; The State, ex rel., v. Stockley, 45 Ohio St., 308; and German-American Ins. Co. v. McBee, 85 Ohio St., 173.
The plaintiff in error maintains that the case must turn upon the interpretation to be given the words “belonging to,” and that the test is no longer one of the actual occupancy or use of the property, but simply one as to whether the institution administering the charity is the owner thereof.
If the constitution of our state was silent on the subject of exemption of property from taxation and if the general assembly had the power to handle the subject wholly at its discretion, as it did under the constitution of 1802, we might accede to the views of the counsel for the institute, especially since the charity created by Benjamin Rose is of such >a commendable and praiseworthy character. That a beneficent public service can and no doubt is being rendered by the institute cannot be questioned, and it is entitled to a fair and reasonable interpretation of the statute under which it asks exemption. This institute is not seeking relief from sordid or unworthy motives of any kind or character, and is, we believe, only desirous that its income be not diminished by the amount *261 necessary to pay taxes thereon, in order that it may more effectually and on a larger scale carry on its kindly work.
It must be admitted by all interested parties that the charity created by Benjamin Rose does benefit the state in that it affords relief to the aged and needy and to the crippled young, and affords it in such a manner as to protect the beneficiary from the loss of self-respect. The testator did render a distinct public service in devoting his immense fortune to this purpose and did possibly render to the state a fair equivalent for the release of his estate from taxation. In view of the peculiar merit of this charity we are disposed to relax to some extent the rule of construction established in the case of Cincinnati College v. The State, supra, the second proposition of which case reads: “All laws exempting any of the property in the state from taxation, being in derogation of equal rights, should be construed strictly.”
But this court, as well as the general assembly, has certain limitations, i. e., those recited in the constitution, that gave both bodies their very existence. The provision on the subject is (see Section 2, Article XII), “ * * * institutions of purely public charity * * * may, by general laws, be exempted from taxation.” Impressed with the duty of interpreting this language reasonably and even liberally, and giving the fairest and most reasonable construction allowable, we cannot extend to it so broad a meaning as to grant the relief which the. institute asks.
*262 The all but universal judicial deliverances along the line have had the effect of confining the exemption to such property as is directly used and employed by the institution in the actual carrying on of the business of the charity. Perhaps the most thoughtful and best reasoned of the cases outside of our immediate jurisdiction are to be found in Pennsylvania and Georgia, in both of which states the constitutional limitations on the subject of exemption from taxation are alike with ours, word for word. Reference is made to the cases of American Sunday School Union v. City of Philadelphia, 161 Pa. St., 307, and Trustees of the Academy of Richmond County v. Bohler, 80 Ga., 159.
In the former of these two cases it is observed by Mr. Justice Dean:
“By no judicial rule of construction can these words be made to mean that a commercial enterprise is exempt because the whole profit of it goes into the treasury of, and it is carried on by, a purely public charity. In so far as the institution is charitable, and its revenues are derived from the contributions of the charitable, it is protected by the constitution. But if such institution sees fit to engage in trade for the purpose of increasing its revenue, or making any part of its business ‘self-supporting/ the trade part of its business can be taxed, and ought to be.”
“Nor does the fact that the profits gathered on the counter of the book-store are devoted to the primary object of the charity, which is purely public, in any degree affect the character of the trading or commercial enterprise. Every dollar the society *263 expends is some charitable contributor’s gains or profits from some business not charitable; if such contributor devoted the whole of his profits from the sale of drygoods, groceries or books to promote this particular charity, that fact would not make the source of such profit a purely public charity. And if, as the master has found, the society was compelled to put a part of its operations on a basis that was self-supporting, by starting a book-store to sell books only of a high moral character, and standard publications, that is trade. That the entire profits of this branch of the business are devoted to the purposes of the charity, no more changes its business nature than if, instead of a book-store, the society had established and carried on a shoe-store. It might have operated a farm or rolling-mill with the same end in view, to put the society, as the master aptly says, on a basis that was self-supporting; but the end would not have exempted the business from taxation.’á
In the Georgia case it is said:
“That the word ‘institution’ both in legal and colloquial use, admits of application to physical things, cannot be questioned. One of its meanings, as defined in Webster’s Unabridged Dictionary, is ‘an establishment, especially of a public character, affecting a community.’ And one of the meanings of ‘establishment,’ as defined by the same authority, is ‘the place in which one is permanently fixed for residence or business; residence with grounds, furniture, equipage, etc., with which one is fitted out; also, any office or place of business, with its fixtures.’ The term “institution” is sometimes *264 used as descriptive of an establishment, or place, where the business or operations of a society or association is carried on; at other times it is used to designate the organized body.’ Gerke v. Purcell, 25 Ohio St., 244. See also Abbott’s Law Diet., and City of Indianapolis v. Sturdevant, 24 Ind., 391. * * * A charitable institution, in the ideal sense, may embody and manifest itself physically and impersonally in a place of business for permanent occupation, with all needful buildings, furniture, outfit, and supplies, for the continuous exertion of its activities. * * *•
“In the casé of a poor-house, the realty might embrace, besides the land covered with the necessary buildings, grounds for recreation, exercise, for pasture of the animals, and even a farm for the inmates to cultivate. The establishment, as a whole, might embrace all these, with articles of personalty to any needful extent for supplying the inmates with all the comforts of life, and keeping them in a healthy, virtuous, cheerful and contented state of existence. We doubt not the entire establishment, however extensive or composite, would be exempt from taxation if used directly and solely for public charity, and not as a source of profit or income. * * * The scheme of exemption as to other than public property seems to be this: to exempt all that is used immediately and directly as a part of the establishment in the conduct of the regular business there carried on, but not such as may be devoted to other uses, such as farming, merchandizing, manufacturing, etc., and from which profit or income is derived. It is the use of the *265 property which renders it exempt or non-exempt, not the use of the income derived from it. Cincinnati College v. The State, 19 Ohio, 110; Library v. Pelton, 36 Ohio St., 258; New Orleans v. St. Patrick’s Hall, 28 La. An., 212; Detroit v. Mayor, 3 Mich., 172; State v. Elizabeth, 4 Dutcher, 103.
“Property used to produce income to be expended in charity is too remote from the ultimate charitable object to be exempt. If property is allowed to be used as taxed property, it also is to be taxed. If it competes, in the common business and occupations of life, with the property of other owners it must bear the tax which theirs bears. Thus, if even a synagogue or a church were rented out during the week for a store-room or a shop, though divine service might be performed in it on Saturday or Sunday, and though the rents were all appropriated to religious or charitable uses, its exemption would be lost. * * * When the tax officer goes forth to search for taxable property, all which he finds employed in the ordinary uses of common life, unless it belongs to the public, he is to regard as taxable. When exemption is claimed, he is not to look for persons, natural or artificial, nor for ideal beings, but for real, visible things, for places of religious worship, places of burial, institutions of purely public charity, colleges, academies and seminaries of learning, public libraries, and the real and personal estate used by or connected therewith, books, apparatus, paintings and statuary kept in public halls, etc., and unless they are in present tangible existence, he cannot exempt something else which he is informed will be used to produce them *266 hereafter. In other words, he is not to spare a form of property not enumerated because, for the time being, it represents a part or the whole of one or more of the forms which are enumerated. The exemption is not a release in personam but a release in rem, and the res to zvhich the release applies must be found and identified by the officer or no exemption can be recognized.”
We gather from these two cases, as well as from the several Ohio cases, these two general and controlling rules of interpretation:
1. It is the use of the property which renders it exempt or nonexempt, not the use of the income derived from it.
2. The exemption is not a release in personam but a release in rem, and the res to which the release applies must be found and identified by the officer or no exemption can be recognized.
We are bound to apply these settled rules of construction to the case now before us, with the further, admonishment that the act of 1910 must be construed together with the constitutional limitation surrounding it. If we gave to the last word of the general assembly on this subject the enlarged scope that is asked, we would so interpret it as to bring it in direct and obvious conflict with the organic law.
To enlarge upon a provision of the constitution beyond the express limitation it permits in the way of privilege and immunities is just as repugnant to the instrument as it would be for the general assembly to attempt to enact into law some measure especially prohibited by the constitution.
*267 The property belonging to this institution is being commercially used. It is competing with other landlords in the city of Cleveland, in securing tenants for its business houses and residences. The trustees of this property would be derelict in duty if they did not secure from the occupants of these several buildings the highest possible return. They must keep these buildings in repair, by the express terms of the trust, and to do this they must draw on the rental income therefor.
No pretense is made that The Citizens Savings & Trust Company, the holding trustee, is managing this property on any other than strictly moneymaking principles consistent with honesty and fair dealing. The case under consideration presents even stronger and more conclusive reasons why this property should not escape taxation than did the facts and circumstances which developed in the case of Cincinnati College v. The State, 19 Ohio, 110, and that case cannot be disregarded as an authority simply because the court at that time was interpreting a statute without constitutional limitations rather than a statute that had its authority' directly from the constitution. In that case, Caldwell, J., says at page 114: “This property is most of it leased and used with a view to profit. * * * But when any society, no matter of what kind, whether scientific, literary, or religious, enters the common business of life, and uses property for the purpose of accumulating money, the government should, and we think the statute does, treat it in the same way persons are dealt with, who are using *268 property in a similar manner, and engaged in the same business. * * * _ ,
“The legislature could not, without a flagrant violation of the principles of equality, on which our institutions are founded, make a distinction such as is contended for, between the store of the Cincinnati College and that of an individual. * * *
“As we have before intimated, the law applies to the property as it finds it in use, and not to what may be done with its accumulations in future.1”
In the case at bar the trustee is frankly and yet properly using the property under its control for the purpose of accumulating money.
It is the use of property for purposes other than making money that justifies its exemption from ■ taxation, and all constitutions and laws on this subject are fairly replete with this spirit and no other.
The end sought is the public good, and not injustice. The small home-owner, struggling sometimes amidst adverse surroundings, deserves consideration at our hands. His burden of taxation is made heavier whenever property of any kind is withdrawn from the field of taxation.
The competitors of the trustee, engaged in the same line of business in the city of Cleveland, are pursuing the necessary and commendable pursuit of procuring a livelihood. They are self-supporting agents in the community, entitled to consideration and fair dealing. They, together with the small home-owner, pay their share of the public burden for fire protection, police protection, the mainte *269 nance of courts of justice and the many other instrumentalities that society employs to make the ownership of private property possible.
If the institute were to sell all of the real estate devised to it for the use of The Benjamin Rose Institute, and should assemble the proceeds in one, two, three, or any number of buildings wherein the objects of the charity were to be carried out, the buildings thus being segregated and removed from their present commercial use, then they would present the ideal property subject to exemption from taxation.
The trustee is not engaged in any respect in charitable work, nor will it ever be so far as the property of Benjamin Rose is concerned. Nothing more than the income can ever be used by the institute to further the purposes set forth in the instrument creating it. Therefore the income, after it is actually paid over to the institute, is the only property belonging to the body that can be held to be exempt from taxation. In this case the income is the res to which the exemption applies.
We interpret the language employed in Section 5353, General Code, to have the effect of exempting from taxation the property belonging to this institution only so far as it is used and employed by the institution for purposes of charity. Any other construction would require the court to hold that the legislature exceeded its power and directly violated the constitution. Making use of the choice of two possible constructions, we prefer the interpretation that will permit the act to survive, rely *270 ing in this connection upon the well-established rule of interpretation that, as between two possible interpretations of a provision which is on its face doubtful, that one which will result in sustaining the law as against a constitutional objection will be followed, to the exclusion of another the effect of which would be to render the law unconstitutional.
In the case of Humphries v. Little Sisters of the Poor, supra, the court in the second proposition of the syllabus defines “institution” in the following language: “The word ‘institutions/ in the sixth clause of sec. 3 of the tax law, is used to designate the corporation or other organized body instituted to administer the charity, and the real estate described as belonging to such institutions has.reference to property owned by them; and to entitle such institutions to hold the property exempt from taxation, they must not only own it, but it must be so used as to fulfill the requirements of the statute.”
We ascertain, therefore, that the question now before the court is a much broader one than one simply as to whether the institution administering the charity is the owner thereof, as claimed by the trustee and institute, for in the Humphries case, supra, the court distinctly holds that the institution must not only own the real estate but it must be so used as to fulfill the requirements of the statute.
In conclusion, brief reference to the amendment adopted in September, 1912, to Section 2 of Article XII of the Constitution, may with propriety be made here.
*271 The language “institutions of purely public charity” has been eliminated, and substituted therefor are the words “institutions used exclusively for charitable purposes.”
While the rights of the parties to this action, as to all taxes assessed prior to April, 1913, are to be determined by proper interpretation of the language of the constitution as it existed at the time the taxes attached as a lien on the real estate of the institution, yet the court might regard this latest expression of the public will as one justifying a strict interpretation of all laws and statutes exempting property from taxation.
It could not be contended for one moment that the property in question by any possible constitutional legislation could be exempt under the language of amended Section 2 of Article XII. Nor can it be maintained, under the provisions of Section 2, Article XII, in force from 1909 to 1913, that the property of Benjamin Rose should escape taxation, unless the decisions of our own state are to be overruled and those of most of our sister states disregarded.
More might be said, but perhaps more than is necessary has already been said. When one reflects over the many able and exhaustive opinions on this and immediately correlated subjects, already to be found in our reports, it might be said that this particular exposition is a work of superogation, or rather an attempt to gild gold already refined, but the very great importance and ever-living interest in the subject fairly justifies the labor devoted to *272 it and the space it will occupy in the archives of the court.
The judgment of circuit court is accordingly affirmed;

Judgment affirmed.

Ñewman, Jones and Matthias, JJ., concur.
Wanamaker, J., dissents.